Plaintiff brings this suit for compensation against the insurer of his employer, alleging permanent total disability resulting from an accident suffered on June 18, 1941, while in the employ of the Louisiana Tractor and Machinery Company.
According to the record, the principal employment of plaintiff, a colored man, who lived in Monroe, Louisiana, was the performance of odd jobs as chauffeur and yard man for a number of families of the city. On the morning of June 18, 1941, plaintiff was idling about Five Points in the City of Monroe, with a companion by the name of McCoy, when a truck driver drove up and asked their help in unloading a carload of oil and grease consigned to the Louisiana Tractor and Machinery Company, located on the Missouri-Pacific team track. Plaintiff and his companion accepted the offer of employment and started to work at about 8:00 o'clock, and, according to plaintiff's story, the accident occurred between 9:00 and 10:00 o'clock, after he had been working some hour or more on the job for which he was hired.
The circumstances of the accident as related by plaintiff indicate that while working in the box car he tilted a barrel of oil, the barrel slipped on a greasy spot on the floor and "snatched" plaintiff forward, resulting in a body strain which it is claimed produced serious back injuries, accelerated a bad heart condition, and thereby brought about total and permanent disability. Plaintiff said nothing at the time about the accident and the resulting injury, but continued with his work until the box car was unloaded and the job finished, which plaintiff testifies was completed about noon, though other witnesses fixed the time at about two or three o'clock in the afternoon.
Sometime after the incident, late in the afternoon, plaintiff mentioned the accident to a friend, that night related the story of the accident to his wife, and the next morning advised the companion, with whom he had worked at unloading the box car, that he had hurt his back. Plaintiff also told Mr. Magee, the truck driver who had employed him on behalf of the Louisiana Tractor and Machinery Company, the day after the alleged accident that he had been injured. It was several days before he made any direct report of the accident to an official of the Louisiana Tractor and Machinery Company, and it was on June 24, six days after the accident, that plaintiff first consulted a doctor.
On the basis of a wage of $12 per week plaintiff was paid compensation at the rate of $7.80 per week by this defendant, for the account of the Louisiana Tractor and Machinery Company, up to the 18th day of February, 1942, at which time compensation payments were discontinued and further payments refused.
In this action plaintiff prays for compensation at the rate of $7.80 per week during disability, not exceeding 400 weeks, subject to credit for payments already made.
There are two principal questions to be considered in the determination of this case: First, the Court is called upon to decide if plaintiff in truth suffered an accident which resulted in disabling injuries, *Page 335 
and, second, the degree and extent of such injuries.
The case was tried before the Honorable J.T. Shell, who, because of illness, was unable to render an opinion and sign the judgment, and, as a result, upon the request of counsel for both plaintiff and defendant, the judgment was signed on July 20, 1942, prior to the summer adjournment of Court, by the Honorable D.I. Garrett. The judgment awarded plaintiff compensation at the rate of $7.80 per week during disability, not to exceed 400 weeks, subject to credits for compensation theretofore paid. Because of the reasons set forth, this Court is unfortunately deprived of the opinion of the trial Judge, assigning reasons for the judgment rendered.
Since there were no witnesses to the alleged accident, it was necessary for plaintiff to attempt to corroborate his testimony by surrounding facts and circumstances, and the only corroboration is found in statements made to third parties by the plaintiff himself at various times, some hours and days after the occurrence of the accident. This character of substantiation is obviously open to serious attack, and it must be admitted that the proof adduced in substantiation of plaintiff's claim is far from conclusive. However, it is clearly the intent of the Legislature in connection with matters involving workmen's compensation that a liberal allowance be made, and that doubts be resolved, to such extent as is reasonable and just, in favor of the employee. This intent has been given added weight by the liberal interpretation and application of the compensation laws on the part of the Courts of this State. It is therefore proper that the question as to the actual happening of the accident be answered in favor of plaintiff's contention, notwithstanding the fact that corroboration of his story fails of absolute conviction.
Taken in connection with plaintiff's narrative of the details of the accident, it is proper that his statements made within a reasonable length of time be considered as lending credibility to his story. And such statements, considered in connection with the testimony of other witnesses as to plaintiff's actual suffering, pain and incapacity immediately following the accident, combine to justify the finding that actual injury was suffered by the plaintiff while acting in the course of his employment.
So far as is disclosed by the record, the few brief hours employment of plaintiff by the Louisiana Tractor and Machinery Company was the only work plaintiff had done with the exception of odd jobs in the nature of domestic employment. However, coincidence follows no rule, and courts cannot refuse to accept facts which form the foundation of a reasonable conclusion, no matter how unusual the nature of the occurrence involved.
Conceding the occurrence of the accident, and an injury resulting therefrom, we are faced with the necessity of a determination as to the character, extent and degree of such injury or injuries. As is usual in cases of this nature, the medical testimony is hopelessly conflicting and irreconcilable. The chief medical witness on behalf of plaintiff testified positively and certainly that plaintiff suffered from a severe injury to his spine, resulting in crooked and fractured vertebrae, constituting permanent injury which would prevent plaintiff from ever again engaging in manual labor, which was the only character of labor plaintiff was fitted to perform. In addition to the severe and disabling back injury, this witness further testified that plaintiff suffered from a heart dilation which might reasonably be expected to bring about his early demise.
The testimony of this witness was based upon an examination made on June 24, 1941, six days after the accident, and subsequent examinations and contacts with the plaintiff in the course of treatment. X-rays of the back injury made by this witness were introduced in evidence and interpreted by his testimony.
The two other medical experts on behalf of plaintiff disclosed examinations made by one in June, 1942, almost a year following the accident, and, by the other, three examinations made in May and June of 1942. The testimony of these two physicians was concerned primarily with the heart condition.
There is no conflict as to the extent and severity of the heart dilation from which plaintiff suffers, and the only question is whether the accident contributed to or accelerated what was definitely a condition of long standing, to such extent as to entitle plaintiff to recovery.
On behalf of the defendant five physicians testified with reference to the nature and character of plaintiff's physical condition. Two of these witnesses are specialists in x-ray and roentgenology. One specializes in internal medicine, diagnosis and *Page 336 
consultation, and the other two are physicians and surgeons in general practice.
The two roentgenologists testified that they found no evidences of spinal fracture, either in the x-ray plates made by them or in the plates made by the chief medical witness for plaintiff. It is strange to find plaintiff's witness testify, just as conclusively, that both his x-ray plates and those of the distinguished specialists testifying for the defendant plainly disclosed spinal fractures. How these things can be must likely remain one of the inscrutable mysteries of science that forever perplex the unskilled and unenlightened lay judges who are called upon to interpret them.
In connection with the testimony of plaintiff's witness on the question of the spinal injury, a written report made by this physician to the defendant, a short time after the accident, which report was introduced in evidence, shows that the injury was diagnosed as "contracted muscles of back — scaliosis"; that the patient was suffering from a fractured spine which was a physical impairment due to previous accident or disease; that there was no disabling condition of the heart, due to the accident, and that the patient would be able to resume regular work "probably in three months". The report further showed "patient has an old fracture but has not prevented him from working".
On cross-examination of this witness he conceded that he was mistaken about plaintiff's condition as reflected in the report, had since revised his opinion, and was convinced that plaintiff was totally and permanently disabled, both from the back injury and the heart condition resulting from the accidental injury.
We are of the opinion that the preponderance of the expert testimony adduced in this case is against plaintiff's contention. The medical witnesses testifying on behalf of the defendant eliminate the question of spinal fracture, and one of the witnesses testified positively that on the date of his examination, September 3, 1941, he was convinced that plaintiff had suffered from a sprained back which should have been entirely recovered at the date of the examination. It must be borne in mind that compensation payments were continued for more than five months subsequent to the date of this examination.
The examinations made by the several physicians whose testimony was offered by the defendant were at various periods after the injury, July 3, 1941, September 3, 1941, April 30, 1942, May 5, 1942, and May 14, 1942. These examinations appear to have been most thorough, and embraced, at least in one instance, a complete laboratory examination. There is no question but that plaintiff was suffering from syphillis which had seriously affected his heart and vascular system. The testimony as to whether the injury suffered contributed to, increased, aggravated or accelerated this disability is irreconcilable, one group of doctors testifying positively that such was the case, and the other group testifying, with equal conviction and emphasis, that such was not the case.
After thorough consideration and analysis of the medical testimony, we believe that plaintiff has failed to establish a total permanent disability resulting from the injury suffered in the course of his employment, either as a direct consequence or as an aggravation and acceleration of existing physical disabilities.
We do not find any ground for serious dispute as to the point that plaintiff's heart trouble had existed for a long period of time, dating back before the injury. True, this condition had progressed to the point of becoming apparent, but we feel it is significant that it was some two months, or more, after the accident before the plaintiff began to suffer from the shortness of breath and other discomforts which indicated a serious heart condition. The weight of the testimony convinces us that this condition was not attributable to the accidental injury.
It is well settled that the plaintiff in a compensation case carries the burden of proof. In this case, plaintiff has failed to show that the alleged accident either caused or aggravated the heart disease, which proof we believe to be necessary to justify plaintiff's claim. Nickelberry v. Ritchie Grocer Co. et al.,196 La. 1011, 200 So. 330.
Convinced that the back injury was temporary in nature, it is our conclusion that the compensation paid from the time of the accident for a period of some eight months was sufficient to cover the period of actual disability.
For the reasons assigned, the judgment appealed from is reversed and set aside, and there is judgment in favor of the defendant, rejecting the demands of plaintiff. *Page 337