This is a compensation suit in which plaintiff alleges that he sustained an injury to his left knee which has resulted in permanent, total disability, while in the employ of the defendant working on a highway bridge over Black River between Concordia and Catahoula Parishes, Louisiana. After trial there was judgment in favor of plaintiff granting compensation at the rate of $20.00 per week for a period not exceeding 400 weeks, from which judgment defendant brings this appeal.
On behalf of defendant certain pleas and exceptions, which were overruled by the District Court, are re-urged before this Court. By reason of the fact that our opinion with respect to the merits of the case definitely disposes of the same, we find it unnecessary to burden this opinion with a discussion of these pleadings.
The gist of plaintiff's claim is that while engaged in the performance of his duties on the morning of October 7, 1946, he slipped and fell, striking the side of his left knee with, considerable force, which injury some weeks later became so painful and troublesome as to result in his disability to do any manual labor, by reason of which fact he claims compensation for permanent and total disability. *Page 492 
The determination of this case rests entirely upon the resolution of questions of fact and we note that insofar as plaintiff's claims are concerned he is dependent almost entirely upon his own testimony with respect to the circumstances of the alleged accident.
We concede the proposition urged by learned counsel for plaintiff to the effect that there is precedent in our jurisprudence for the application of the general principle that the testimony of a plaintiff alone is sufficient to make out his case, but only, as was well stated in Dolhonde v. Gullett Gin Co., La. App., 25 So.2d 104, 106: "* * * if there is nothing to discredit his (plaintiff's) account of the accident and resulting disability, and his statements are supported by the surrounding circumstances." To the same effect see O'Connor v. American Automobile Ins. Co., La. App., 32 So.2d 624.
Subjecting the record before us to minute examination in the light of this principle, we are convinced that plaintiff's story of the accident has been completely controverted and refuted not only by the preponderating testimony of defendant's witnesses but by the surrounding physical circumstances themselves.
Briefly, an analysis of plaintiff's testimonial narrative of the accident may be recapitulated as follows:
On the morning of Monday, October 7, 1946, plaintiff, in company with some 10 or 11 fellow employees, left the Highway barn at Winnsboro and was transported by the Highway Department truck to the bridge over Black River, upon which certain repair work was in progress. The particular work in which plaintiff was engaged, as were several other members of the crew, necessitated the cleaning of the tar filling in the expansion joints of the bridge. These joints were separated by a space of some 10 to 14 feet and at least 3 or 4 groups of the crew, working in pairs, were employed in this particular work. The method of operation required one of each group to hold a chisel while his companion struck the chisel with a sledge hammer, and, in this manner, the tar was loosened to such extent as would permit its removal. Sometime during the morning, according to plaintiff's story, his companion temporarily left work in order to go to the truck, which was parked some distance from the bridge, for the purpose of getting a drink of water. Parenthetically, we call attention to the fact that plaintiff's working companion, one McDaniel, was also the driver of the truck. Plaintiff testified that he, too, decided to leave the bridge in order to get a drink of water and that as he rose from a squatting or sitting position, having been engaged in holding the chisel while his companion struck it with a sledge hammer, his right foot slipped and he was thrown to the floor of the bridge in such manner that his left knee was forced into the expansion joint, which plaintiff testified was some 3 or 4 inches in width, severely bruising the side of his knee. Despite the accident plaintiff made no complaint and later continued his work, not only for the remainder of the day, but for the following days until, on October 9th, his thumb was struck and injured by a blow of his working companion's hammer, which injury necessitated medical treatment. An infection developed from this thumb injury and plaintiff presented himself to his physician on a number of occasions for a period of some two weeks, and not until October 25, 1946, did he inform the doctor of the knee injury. Plaintiff further testified, albeit his testimony on this point was most confused and uncertain, that he told one, and only one, of the crew, an employee by the name of Knox, of his injury, a short time after its occurrence.
Briefly, the above are the facts as related by plaintiff. The only corroboration of any part of his story was presented in the testimony of Knox, who said that he saw plaintiff sitting down on the bridge holding the chisel and upon walking over and asking him why he was in that position plaintiff replied that he had injured his knee and showed him the injury.
Upon these facts and this testimony of plaintiff and the witness Knox, unquestionably he would be entitled to judgment were it not for the fact that the testimony of defendant's witnesses, in our opinion *Page 493 
conclusively preponderates against the acceptance of almost every detail of plaintiff's version of the alleged accident.
It must be borne in mind that some three or four pairs of the crew were engaged in identical work as that pursued by plaintiff at the time and were within varying distances of from 20 to 40 feet. Four of plaintiff's fellow employees, who were so engaged in their work in the immediate vicinity, testified that they did not see plaintiff fall, that he made no complaint at any time of having sustained an injury, and, by stipulation in the record, it was admitted that a fifth employee would have testified to the same effect. Additionally, plaintiff's pair worker, McDaniel, testified with positive assurance and certainty that neither he nor plaintiff left their job of cleaning the expansion joint on which they were working at any time during the morning of October 7th. Elaborating on this testimony McDaniel, who was corroborated by others of the crew, testified that it was his particular duty to furnish water on the job and that it was well known by all the members of the crew that no water was available on Monday morning, it being his custom to go to the ice house at Jonesboro to fill the water barrel with ice and water during the noon lunch hour.
It is strenuously urged by counsel for plaintiff that this testimony of defendant's witnesses is entirely negative and therefore can not be regarded as overcoming the affirmative testimony of plaintiff and the witness Knox. We freely concede the fact that negative testimony is inferior to affirmative evidence, but in this case we cannot concur in counsel's evaluation of the defendant's evidence. As a practical proposition it would be thoroughly unreasonable to assume that the accident related by plaintiff could have occurred in the manner asserted without attracting some notice on the part of a group of men who were working within a relatively circumscribed area. And certainly there is nothing negative about McDaniel's testimony which squarely contradicts the plaintiff.
Plaintiff is further definitely and positively contradicted on another material physical fact. It is observed that plaintiff testified that the expansion joint upon which he was working was some 3 to 4 inches in width and that his knee wentinto such space. Clearly this testimony is designed to meet the needs of the occasion since otherwise plaintiff could not have sustained such a severe injury to the side of his knee. But it is established beyond any doubt by the testimony of every other witness that the expansion joint, upon which plaintiff was working at the time, was not more than one-half to one inch in width. Obviously it would have been impossible for plaintiff's knee to have gone into such a narrow space.
We find no difficulty in reaching the conclusion that plaintiff did not sustain an accidental injury while employed by the defendant at the time and place alleged. The one fact which plaintiff has established beyond question is the existence of an injury to his knee, but when, where and how the injury was sustained the record does not disclose.
Recapitulating what is to us the clear preponderance of the evidence, we are convinced that plaintiff has completely failed to sustain the burden of establishing his case by that preponderance of evidence which is required even in compensation cases. The burden of proof in these cases is upon the plaintiff, and, further, as has been declared in a long line of cases, it is not sufficient for a claimant to make out a case that is merely probable, but it is required that he establish it with legal certainty; Spears v. Brown Paper Mill Co., La. App., 9 So.2d 332; Powell v. American Employers Insurance Co., La. App., 14 So.2d 333; White v. Delta Shipbuilding Co., Inc., La. App., 24 So.2d 497; Pierce v. Delta Tank Mfg. Co., La. App., 39 So.2d 908.
In our consideration of this matter we have not neglected the weight and effect which properly attaches to the finding of our learned brother of the District Court. Nevertheless, for the reasons which are above elaborated, we are convinced that the judgment in this cause is manifestly in error. *Page 494 
Accordingly, the judgment appealed from is reversed, annulled and set aside, and there is now judgment in favor of defendant rejecting plaintiff's demands at his cost.