73 So.2d 602 (1954)
DRIGGERS
v.
COAL OPERATORS CASUALTY CO.
No. 8168.
Court of Appeal of Louisiana, Second Circuit.
June 25, 1954.
Rehearing Denied July 16, 1954.
Mecom, Scott & Despot, Shreveport, for appellant.
Gravel & Downs, Guy E. Humphries, Jr., Alexandria, James T. Adams, Shreveport, for appellee.
AYRES, Judge.
Plaintiff instituted this proceeding against his employer's insurer under the Workmen's Compensation Act, LSA-R.S. 23:1021 et seq., for the recovery of the maximum benefits provided therein for total disability alleged to have been sustained by him as the result of two alleged accidents, the first on December 19, 1952, and the second on January 20, 1953.
Plaintiff alleged on the first occasion, during the course of his employment with the Gulf States Truck Lines and while engaged in unloading oil field pipe from his truck, he suffered a sudden sharp pain in his back, which contributed, or in part, caused an injury to his back. He alleged that he gave due notice of this accident and his injury to his employer but was instructed to continue his work.
He further alleged that on the date of the second occasion referred to, while in the yards of his employer assisting in the loading of a truck with pipe he slipped and fell from the truck and struck himself on the gas tank of the truck, inflicting injuries to his left hip, bruising and skinning himself severely and hurting his back again. Report of this accident was also alleged to have been made to his employer.
After the date of the first accident, he contends that he only performed light duties, which were more restricted after the date of the second accident.
Defendant, in its answer, denied that plaintiff sustained an accident or that plaintiff in fact had any disability.
From a judgment rejecting plaintiff's demands he has appealed to this court.
The issues presented to the trial court, as now presented here, are: (1) Did plaintiff *603 sustain accidental injuries during the course and scope of his employment?, and, (2), if plaintiff sustained accidental injuries, is he disabled from doing work similar to that which he was performing at the time of his injury? The questions presented are questions of fact and their determination is based upon a consideration of the evidence adduced upon the trial of this case. The principal issue and the one we shall first consider is whether or not plaintiff sustained an accident or accidents during the course and scope of his employment. To determine whether or not plaintiff has sustained his burden of proof on this point, it appears necessary to state plaintiff's version of the accidents and the circumstances appearing subsequently thereto.
The accident of December 19, 1952, was alleged to have occurred at Buffalo, Texas. On the preceding day plaintiff drove a truck loaded with oil field pipe from Shreveport, Louisiana, to Buffalo, Texas. Another employee, Robert Glover, drove a similar truck and equipment to the same destination. On the morning of December 19, 1952, plaintiff and Glover began discharging their loads onto a pipe rack, which rack was approximately two feet lower than the level of the pipe on the truck, which necessitated the use of skids in the process of unloading. Plaintiff contended that the pipe, after it was placed on the rack, would roll off onto the ground and had to be lifted back onto the rack by him and Glover. After unloading a portion of plaintiff's load, plaintiff alleged that while he and Glover were lifting a joint of pipe, to be placed on the rack, he experienced a severe, sudden pain in his back, whereupon he discontinued his assistance with the work. Plaintiff claims he then informed Glover that he would not be able to continue to assist in the unloading; that he got into the cab of his truck and there remained until all the pipe was unloaded. The job was completed by Glover and two or three others whose services Glover procured to assist him. Plaintiff and Glover then returned with their trucks to Shreveport. On reaching the employer's place of business, plaintiff filled his truck with gas and then went into the dispatcher's office, in the presence of Glover, and reported the amount of gas obtained for his truck. On that occasion, plaintiff states he told Mr. Barlow, transportation supervisor for the Gulf States Truck Lines, that he had sustained an injury and that Barlow instructed him to go home and call him the next morning, which he says he did. This conversation was supposedly had in Glover's presence.
Plaintiff states that he was suffering severe pain and was driven home by Glover in Glover's car and that he was not able to return to work until the following Tuesday.
The second accident is alleged to have occurred January 20, 1953, in the yards of his employer in Shreveport, while plaintiff was assisting in loading tubing onto his truck when he slipped and fell, striking the gas tank and injuring his hip and back. He alleges also that he reported this accident and continued with his work. However, his testimony varies from his allegations. According to his testimony, he was standing on the back end of his truck, pulling on a chain which suddenly and abruptly came loose, causing him to fall onto the gas tank of his truck and then to the ground. On one side of the truck, supposedly, was Mr. J. T. Benson, the father of Wayne T. Benson, owner of the Gulf States Truck Lines. About ten feet away and to his right was Bill Bass. After this accident, he got up and rubbed his hip and leg for a few minutes. Nothing was said to either Benson or Bass about his being injured. He took the broken chain to Bass and said that Bass exchanged a good chain with him for the broken chain. He then proceeded with his truck to another place in town, where his truck was loaded. At first, his testimony revealed that he assisted in the loading of his truck until it was completed, but upon his attention being called to a prior statement that he did not assist in loading the truck until it was completely loaded, he then stated he only assisted while the truck was partly loaded and sat down while the load was finished. As to this, he gave testimony wherein he informed *604 a Mr. Spillers and C. D. Lewis that because he had injured his hip he could not continue with the loading. Two other employees, one by the name of Burton and the other by the name of Ezell, were supposedly present and heard the statements made to Spillers and Lewis.
Plaintiff remained in the employ of Gulf States Truck Lines until February 9, 1952, when he was discharged for violation of safety rules and regulations and driving his truck at excessive speed. When he was discharged plaintiff made no complaint to his employer about either of said accidents or of any injuries that he may have sustained therein or of any incapacity or impairment affecting his ability to work. After leaving the premises of his employer, on the date of his discharge plaintiff reported to Dr. S. W. Boyce, who advised him to secure the services of a lawyer.
In an effort to establish that he sustained an accident at Buffalo, Texas, Roosevelt Glover, who was then a fellow employee of plaintiff, was called and testified to the fact that they first unloaded Glover's truck and then unloaded plaintiff's truck by throwing pipe or casing onto the ground near the pipe rack and that it was subsequently lifted into place with a gin pole on Glover's truck. Plaintiff testified that his truck was unloaded first and before that job was completed he had injured his back; that the unloading was done by hand without mention that the pipe was thrown on the ground and afterwards placed in position on the rack with the mechanical device on Glover's truck. Glover stated:
"Q. You did not see Mr. Driggers get hurt while he was working for Gulf States, then? A. No, sir.
"Q. You did not know anything at all about him being hurt while he was on the job with you? A. No, sir.
"Q. At the time while he was working with you, you know he did not get hurt, is that correct? A. Yes, sir."
The plaintiff and his wife both testified that upon his arriving at home in Glover's car from the trip to Buffalo, Texas, he barely made it from the car to the house. According to their testimony, plaintiff staggered and limped, and it was only with great effort and pain and with the assistance of Glover that he succeeded in entering his residence. Glover, however, testified that plaintiff got out of his car and walked into the house and that he, Glover, noticed no difference in plaintiff's actions or walk.
Notwithstanding plaintiff's testimony, as hereinabove referred to, that he reported his injury and accident to Mr. Barlow, Mr. Barlow testified that plaintiff made no such report or mentioned the accident to him or any complaint of pain to his back.
The plaintiff further testified that on account of the pain suffered by him, he was unable to report for work until the following Tuesday. The records of his employer show that he was off from work only on Saturday and Sunday, usually days on which no work is performed, and reported for work on Monday, December 22, 1952, when he drove a truck to Converse, Louisiana. On the next day he drove a truck to Haynesville, Louisiana, and the day following to Bay City, Texas.
With reference to the second alleged accident, plaintiff's testimony was contradicted by that of Bill Bass, who was about ten feet away when plaintiff claims that he fell from the truck. Bass did not see plaintiff fall from the truck and did not remember exchanging chains, as related by plaintiff. It is inconceivable that a heavy chain could be dropped onto a metal tool box and a person fall from a truck, striking the gas tank of the truck, and fall onto the ground with another person only ten feet away not noticing the occurrence or hearing any noise made by the disturbance. If an accident had occurred, as plaintiff claimed, it seems Bass would most assuredly have seen or heard it or in some manner his attention would have been called to it. It would be strange indeed that plaintiff would have called no one's attention to this accident. However, plaintiff stated that he informed J. N. Spillers *605 of the accident, giving as his reason therefor his inability to assist in completing the loading of the truck; however, Spillers testified that plaintiff at no time reported having sustained an accident of any nature; that he did not know of any injury; and that plaintiff made no complaints to him. As to plaintiff's claim that he gave this information also to Otha Ezell, such is completely contradicted by Ezell. Ezell was a co-employee who made a trip with plaintiff in another truck to Cleveland, Texas. Ezell assisted in the loading of the truck before making the trip and stated plaintiff assisted therein, doing as much work as he ordinarily did.
Plaintiff's testimony, to the effect, that, after December 19, 1952, he walked with a limp and in a stooped position at all times; that he had difficulty in getting in and out of a chair; that he was restless and at times walked the floor; and that he suffered severe pains, bringing him to tears, is corroborated by the testimony of several relatives of his and of his wife.
This testimony is refuted by Mr. Benson, his employer, and his former fellow employees, who testified that his walk and actions were normal; that he did his work satisfactorily other than the violation of safety regulations, and that no one had to assist him because of any injuries or physical disability.
Notwithstanding all the pain and suffering undergone and disabilities claimed by him, plaintiff's failure to consult a physician until after he was discharged from his employment, February 9, 1953, has not been explained. His failure in that respect runs counter to the normal actions of human beings in such circumstances.
Plaintiff claims that after his discharge he sought other employment and particularly with the City of Shreveport in a department headed by Mr. R. B. Russell and that he failed to secure employment there because of his physical condition and his inability to do the work required on the job sought by him. Plaintiff had formerly worked in that department. Mr. Russell, testifying on behalf of defendant, contradicted plaintiff in every particular and declared plaintiff had not made application to him for employment either in person or by telephone and that, moreover, he had not seen the plaintiff for quite some time.
From a detailed review and consideration of all the evidence in the record, no conclusion could be reached other than that plaintiff's testimony, uncorroborated and contradicted, is unconvincing and insufficient to support a judgment in his behalf. Plaintiff has completely failed to sustain the burden of establishing his case by that preponderance of evidence required by law. The conclusion is inescapable that plaintiff has not shown even to a degree of probability that an accident occurred, but on the contrary the evidence shows that it is highly improbable.
This court said in Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491, 493:
"The burden of proof in these cases is upon the plaintiff, and, further, as has been declared in a long line of cases, it is not sufficient for a claimant to make out a case that is merely probable, but it is required that he establish it with legal certainty; Spears v. Brown Paper Mill Co., La.App., 9 So. 2d 332; Powell v. American Employers Insurance Co., La.App., 14 So.2d 333; White v. Delta Shipbuilding Co., Inc., La.App., 24 So.2d 497; Pierce v. Delta Tank Mfg. Co., La.App., 39 So.2d 908."
The testimony of the expert for the plaintiff was, at least, balanced with that of the experts for the defendant. Dr. Boyce, to whom plaintiff reported immediately following his discharge from his employment, was first of the opinion that plaintiff's difficulty was that of a sacroiliac strain; later, that it may have been a ruptured disc and that as a result of which plaintiff was incapacitated from performing work of a reasonable character.
*606 Dr. Gene D. Caldwell, on behalf of the defendant, made an examination of the plaintiff and was unable to find any objective evidence of any disability. Plaintiff, according to his testimony, was able to stand and walk on his tip-toes and his heels without difficulty; was able to climb upon the examining table and turn without difficulty. Hypertension of both the lower extremities was full and unrestricted, and both legs were of equal length. No appreciable difference in size existed in his thighs or calves.
Dr. Ernest B. Flake, after examination, did not find any evidence of disability, and, in his opinion, plaintiff was able to do and perform the work usually done by him. Both Dr. Flake and Dr. Caldwell were of the opinion that the position assumed by plaintiff at times during the trial, crossing one leg over the other, was a position which patients with a ruptured disc could not assume without considerable pain.
Under the facts of this case, as shown by the testimony just referred to, taking the view of the situation as to the medical testimony most favorable to plaintiff, there could exist no more than an even balance between the contentions of plaintiff and those of the defendant. Plaintiff has not therefore proven his case even as to his disability with that degree of certainty indispensable to a judgment in his favor.
A consideration of the lay testimony, where the medical testimony is contradictory, would not avail plaintiff anything here. The preponderance of the lay testimony is that plaintiff is fully able and capable of pursuing his usual work.
Appropriate to the situation here is the statement of this court in Roberts v. M. S. Carroll Co., Inc., La.App., 68 So.2d 689, 693:
"The jurisprudence of every appellate tribunal of this state has incontrovertibly established the rule that the plaintiff in a compensation case, as in other cases, bears the burden of proof. He is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Speculation, conjecture, mere possibility, and even unsupported probability, are not sufficient to support a judgment."
Finding no error in the judgment appealed from, it is affirmed at appellant's cost.

On Applications for Rehearing
PER CURIAM.
In applications for rehearing which have been filed on behalf of both plaintiff and defendant, our attention has been called to an inadvertent error in the decree of this court. Inasmuch as plaintiff's suit was brought in forma pauperis, under order of the court relieving plaintiff of the payment of the costs and the giving of bond, it follows that the assessment of costs against plaintiff was in error.
This mistake is subject to correction without the necessity for granting a rehearing, and, accordingly, it is ordered, adjudged and decreed that the judgment of this court as rendered June 25, 1954, be and it is hereby corrected and amended by eliminating the assessment of costs, and as amended is reinstated.
The applications for rehearing are denied.