ELLIS, Judge.
This is a workmen’s compensation suit brought by Audra M. Williams against G. L. Malone, International Paper Co., and James M. Harris, seeking benefits under the Louisiana Employers Liability Act for injuries he alleged were sustained on March 4, 1954, while employed by the last named defendant. During the course of the trial suit was dismissed by Williams against Malone and International Paper Co.
The answer filed by Harris admitted the employment of Williams on the date of the alleged accident; that the employment was hazardous; that the employee’s average daily wage was $7.50 per day, while plaintiff contended it was $8.00 per day; that no accident had occurred and no compensation was due. These issues were stipulated prior to trial.
The District Court rendered judgment dismissing plaintiff’s suit, with written reasons, and the plaintiff has perfected this devolutive appeal.
******
As stated by the District Court, four questions are presented upon the issues drawn. “(1) Did an accident occur, (2) If so, were disabling injuries produced thereby, (3) If so, the extent thereof and (4) If these are answered in the affirmative, what was plaintiff’s daily rate?”
******
The alleged accident occurred when the plaintiff and a partner, J. D. Maddox, were at work loading pulp-wood onto a truck. Williams, on direct examination, stated that he and his partner had picked up a piece of this wood about 10 inches in diameter and about 5 feet long, when he stepped backward into a hole, which caused him to fall on his left side, where he remained for some 4 or 5 minutes; that he suffered intense pain in his left hip. The trial Court, in well-considered written reasons, pointed out the plaintiff “made a most unsatisfactory witness in his own behalf. His obvious attempted dramatics, in an effort to impress the Court, his repeated contradictions, his evasions, his hesitations in answering questions, his whole manner in testifying, was such as to create in the mind of the Court the gravest doubt of the truthfulness of his testimony on many points.”
These reasons proceed to illustrate these contradictions and evasions. Plaintiff was asked if he had ever been injured before, and upon making a negative reply, was asked if he ever collected any compensation payments. His answer to the last question was in the affirmative. Further testifying, he described an accident he suffered while in the employ of the City of DeRidder in 1938, admitting he was paid $100, which he took because a physician said he was able to return to his work. Later he testified he *746 had worked upon another job, when his back was hurt the day after the physician had discharged him. He admitted he hurt his left hip in this last accident. He also1 maintained at the time of the accident forming the basis of this lawsuit, he told Maddox that he was hurt in the lower part of his back. Maddox admitted Williams said his back was hurt but stated, in answer to the question, “Was he lying on the ground”, that he did not believe so, because he and the plaintiff had to put the piece of wood they were loading down to the ground because the plaintiff said he was hurt and could not lift it. Maddox denied Williams ever did fall to the ground, but by demonstration, testified he went down to his knees. From this witness’ testimony the Court concluded that no objective symptoms of any injuries were proven. (Italics ours).
A. J. Lanman, the only other witness present, owned the pulp-wood, which he had cut and which he was selling to the defendant employer. This witness testified he was about 15 or 20 feet from Williams when he stepped into the hole, but did not remember Williams having said anything; that he, himself, said “That is a good way for a fellow to get hurt.” He was not positive about whether the plaintiff fell. Mr. Lan-man further stated that sometime in June, after the accident, the plaintiff came to see him, requesting his aid in recovering damages, and at this time, during the course of his conversation, offered Lanman some tires. The written opinion concerning this occurrence reads: “The witness refused the offer and said T didn’t want to take anything that would appear that I had been bought’, indicating that he thought plaintiff’s offer had been in the nature of a bribe’ ”. It appears from the record, and the Court concluded, this witness had no interest in this cause, and his veracity was not to be doubted.
The plaintiff testified he went to see the defendant twice on the day the accident occurred, but being unable to contact him then or on the next day, saw him upon the third day, and after claiming he had been injured, was told to go1 to a doctor. The defendant’s testimony, and that of his employee, Mrs. Honea, contradicted these statements, the employer stating the plaintiff never did say anything to him about an accident, and he did not know plaintiff was claiming an injury until he received a letter from an attorney on or about June 18, dated June 17, 1954, demanding compensation.
Mrs. Honea, who works in a store operated by the defendant, was positive when she stated he came by the store on the day he claims he was injured, and that he made no complaint to her; that he appeared to be normal. This is in absolute contradiction to a statement of the plaintiff that while he was in the store, during the absence of the defendant, Harris, he asked this lady to let him rest on the floor as he was in such great pain.
Based upon the testimony, summarized hereinabove, the Court concluded the plaintiff had failed to establish there was an accident within the purview of the Workmens’ Compensation Act. He based this conclusion upon jurisprudence requiring a plaintiff in compensation cases, as he must in other civil cases, to bear the burden of proof and establish his cause by a reasonable preponderance of evidence. Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602; Smith v. International Paper Co., La.App., 73 So.2d 652.
LSA-Revised Statutes 23:1021 (1) reads:
“(1) ‘Accident’ means an unexpected or unforeseen event happening suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.”
Our jurisprudence has held it is not necessary that an accident should seem at the time of its occurrence serious in order to come within this definition, as evidenced by Robichaux v. Realty Operators, 195 La. 70, 196 So. 23. All that is necessary is for an employee, because of physical weakness or disease to be overcome while performing his usual work in the manner he ordinarily does it. Custer v. Higgins Industries, La.App., 24 So.2d 511.
*747 Counsel for appellant has called our attention to Powell v. American Employers Ins. Co., La.App., 14 So.2d 333, at page 335:
“However, it is clearly the intent of the Legislature in connection with matters involving workmen’s compensation that a liberal allowance be made, and that doubts be resolved, to such extent as is reasonable and just, in favor of the employee. This intent has been given added weight by the liberal interpretation and application of the compensation laws on the part of the Courts of this State. It is therefore proper that the question as to the actual happening of the accident be answered in favor of plaintiff’s contention, notwithstanding the fact that corroboration of his story fails of absolute conviction.”
It might well be that had plaintiff proven his account of the acts which occurred and the statements he claims he made at the time of the alleged accident, that one would have been shown under the Statute and jurisprudence quoted above. 'However, the District Court was not satisfied with the truthfulness of Williams’ testimony in view of the statements made by Lanman, and the request of assistance, coupled with the offer of a gift of tires, made to this witness by the plaintiff. As has often been said the trial court observes the witnesses and has the benefit of weighing their mannerisms and spoken testimony, and is in a much better position to judge the veracity of a witness than an appellate court, which has only the written record. Also, the plaintiff, after the alleged accident, and after the truck had been loaded, proceeded to help unload the truck at a freight car, and there asked the witness, Riley Brister, who was present, “How do you go about making some easy money?” Coupling these contradictions, the trial Court was of the opinion no “accident” occurred. Even if it be concluded there was an “accident” no disability has been proven.
Plaintiff’s own physician, according to the written reasons, supported by the record,, administered some medicine for relief of pain but gave no examination for any back or hip injury, nor directions for rest, immobilization, braces or X-rays, and “was not impressed with plaintiff’s complaints.”' An expert witness for the defendant, by admitted written report, found no evidence of any residual disability from a three-fourths inch shortening of the lower left leg, no muscular spasm and no evidence of any boney injury or diseases. His report concluded the plaintiff was able to work at the -time it was made, August 13, 1954. Another physician who examined the plaintiff, admitted the shortening of his leg could have been caused from a congenital condition. Another expert witness for the plaintiff found no abnormalities except this shortening of the leg, and did not believe plaintiff was disabled.
The lay testimony evidences the plaintiff went to work again for the defendant on March 8, 1954, some four days after the alleged injury, hauling tung nuts. This work necessitated lifting heavy sacks, and part of the duties were to drive a truck over plowed ground. He worked at this job for about a week, until it was finished.
Upon consideration, we agree with the lower court that the expert and lay testimony does not show the plaintiff suffered any disabling injuries while in the employ of the defendant, and there was no present’ disability at the time of the trial. Therefore there is no reason to examine the testimony concerning the wages of the plaintiff.
Finding no manifest error, we hereby affirm the judgment of the lower court.