139 So.2d 779 (1962)
B. L. BROWN, Jr., Plaintiff-Appellant,
v.
Ernest R. CROCKER, Defendant-Appellee.
No. 9680.
Court of Appeal of Louisiana, Second Circuit.
April 4, 1962.
Bethard & Bethard, Coushatta, for appellant.
Anderson & Stephens, Coushatta, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This action in tort was instituted by plaintiff, as the administrator of the estate of his minor son, against the defendant to recover the value of a quarter-horse mare and a stillborn colt, and for damages occasioned by shock and mental anguish suffered by the son, as well as for services of a veterinarian and medicines used in treatment of the mare following her wounding by a shotgun blast intentionally inflicted by the defendant. The issues concern, primarily, a causal relationship between defendant's tortious act and the damages allegedly sustained.
The trial court found that the colt was aborted as a result of the shooting, and, accordingly, awarded damages for its loss as well as damages for the shock and mental anguish experienced by the son. The court concluded, however, that plaintiff had not sustained his burden of proof and established, by a reasonable preponderance of the evidence, that the mare died as a result of the shot.
*780 From a judgment awarding damages in the sum of $500 for the loss of the colt and $100 for shock and mental anguish suffered by the minor, plaintiff appealed. By this appeal, plaintiff seeks, additionally, the sum of $4,750 for the loss of the mare and an increase of the award for shock and mental suffering to $750.
The record establishes these material facts. This mare, together with another, was acquired by plaintiff for a price of $3,000. In April, 1957, plaintiff made a gift of this animal to his son and caused its registration to be transferred to him. The mare was kept in an enclosure at the rear of plaintiff's residence located in the Town of Coushatta. On the afternoon or evening of January 24, 1960, a gate to this enclosure was unintentionally left open by someone, probably some of the neighbors' children, who frequently played with and rode the horse. The mare, gaining its liberty by escaping through the open gate, strayed to the lawn of defendant's residence and was apparently blocking entrance to an apartment located on the lot and occupied by defendant's daughter and her family. To scare this animal away and deter its returning to his yard, defendant, about 10:00 p. m., from a distance of approximately 70 feet, shot the animal in the flank and stifle with a load of No. 6 squirrel shot. At this time, the mare was heavy with foal which would have been birthed in about two weeks. The mare rushed from the yard and was not seen again by the defendant. The morning following the shooting, plaintiff discovered the mare standing in his own yard near his bedroom window. Her condition at that time was described in this manner:
"The mare was standing perfectly stiff. She couldn't move either hind leg. She was straining. I didn't know what was wrong with her. I just knew she was shot."
According to plaintiff, shortly thereafter, the mare lay down, groaned, and strained. That afternoon the colt was aborted. Previous to that time, according to plaintiff's testimony, the animal had been in good health, had been shown at various stock shows, and had been raced. August 29, 1960, the mare became sick. A veterinarian was summoned, treatment was administered, but, nevertheless, the mare died August 31, 1960. Within a few hours after her death, the veterinarian performed an autopsy which disclosed that the diaphragm between the thoracic and abdominal cavities was ruptured with an 18-inch opening through which the spleen, half the liver, all of the stomach, and some of the intestines had passed. An intestine was strangulated and ruptured, followed by or producing gangrene and peritonitis.
The defendant neither appealed nor answered plaintiff's appeal. Hence, a finding of the trial court that, because of an unbroken sequence of events from the shooting of the mare, her reactions, and symptoms, to the time of the abortion, and, in view of the expert testimony of the veterinarians, the colt was lost as a result of injuries sustained by the mare is a foreclosed issue and not before us for reconsideration.
The determination of the cause of the injury which brought about the death of the mare is not so easily resolved. The court, as aforesaid, concluded that the plaintiff failed to sustain the burden of proof and establish, by a preponderance of evidence, a causal connection between the shooting and the death of the mare. In giving consideration to the testimony relating to this phase of this litigation, certain well-recognized principles of law must be borne in mind. For instance, as stated in Wilson v. Standard Accident Insurance Company, La. App.2d Cir., 1957, 92 So.2d 781, 783:
"The burden of proof is upon plaintiff, and, as has been declared in a long line of decisions, it is not sufficient for a plaintiff to make out a case that is merely probable but the requirement is that he must establish his case by a preponderance of evidence with legal certainty. Spears v. Brown Paper Mill Co. Inc., La.App., 9 So.2d 332; Powell *781 v. American Employers Ins. Co., La. App., 14 So.2d 333; White v. Delta Shipbuilding Co. Inc., La.App., 24 So.2d 497; Pierce v. Delta Tank Mfg. Co., La.App., 39 So.2d 908; Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491; Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602; Higgs v. Monroe, La. App., 77 So.2d 555.
"There is, therefore, an incontrovertible rule well established in the jurisprudence of this State that the plaintiff in an action in tort, as in other cases, bears the burden of proof; he is required to establish his claims to a legal certainty by a reasonable preponderance of the evidence. Mere possibilities and even unsupported probabilities are insufficient to support a judgment. Roberts v. M. S. Carroll Co. Inc., La.App., 68 So.2d 689."
An interval of seven months and one week elapsed from the shooting to the death of the animal. The cause of death was a strangulation and rupture of the intestine followed by or causing gangrene and peritonitis to set in. This strangulation and the rupture of the intestine were caused or superinduced by the rupture of the diaphragm. What caused this rupture of the diaphragm is the important question presented for determination.
From the testimony of the veterinarians, Drs. M. A. Waguespack and Varley F. Young, it can hardly be supposed that the shot which merely pierced the hide and entered the muscles could have produced this rupture of the diaphragm, so well enclosed and protected by the ribs. The consensus of the veterinarians is that herniated diaphragms may be produced by violent injuries, where the intestines and stomach are thrown violently against the diaphragm, such as may occur when animals are kicked or engaged in a fight, or by spasmodic colic, rolling on the ground, or from a congenital defect which may have been aggravated by the maturation process or labor in producing birth.
Neither of the expert witnesses was able to point out, with any degree of certainty, any causal relationship between defendant's assault upon and shooting of the animal and the rupture of its diaphragm which ulitmately resulted in the strangulation and rupture of an intestine, followed by or producing gangrene or peritonitis, and, ultimately, the death of the animal. We therefore conclude, as did the trial court, that the evidence establishing such relationship as a mere possibility, or even a probability, is insufficient, and that such causal relationship has not been established by a preponderance of evidence to a legal certainty.
Lastly for consideration is plaintiff's claim for damages for shock and mental anguish experienced by his minor son as a result of the shooting, loss of the colt, and death of the mare. That such recovery can be had is well settled in the jurisprudence of this State. M. L. Byrne & Co. v. L. H. Gardner & Co., 33 La.Ann. 6; Wolf v. Stewart, 48 La.Ann. 1431, 20 So. 908; Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 So. 972, 124 Am.St.Rep. 448; McGee v. Yazoo & M. V. R. Co., 206 La. 121, 19 So.2d 21; Pecoraro v. Kopanica, La.App. Orleans, 1937, 173 So. 203; Holmes v. Le Cour Corporation, La. App. Orleans, 1958, 99 So.2d 467.
The evidence discloses a very close attachment, fondness, and affection of the minor for his horse. He fed and groomed it, and carried it to stock shows. His shock and anguish, on discovering that his horse had been shot, were intense, and renewed on observing the pain and suffering of the horse. His anticipation of rearing a quarter-horse thoroughbred was thwarted by a single shotgun blast. That his sorrow and anguish were manifested by crying and sobbing was nothing unusual for a youngster who prized his possession. Under the facts and circumstances, an award of $250 *782 for shock and mental anguish suffered by the minor would, in our opinion, do justice between the parties.
Accordingly, the judgment appealed is amended by increasing the award to $750 and, as thus amended, it is affirmed. The defendant-appellee is assessed with all costs, including the cost of this appeal.
Amended and affirmed.