367 So.2d 1246 (1979)
Robert PELOQUIN, Indiv., etc., Plaintiffs-Appellants,
v.
CALCASIEU PARISH POLICE JURY et al., Defendants-Appellees.
No. 6793.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1979.
*1247 Steven Broussard, Lake Charles, for plaintiffs-appellants.
Stockwell, Sievert, Viccellio, Clements & Shaddock, Fred H. Sievert, Raggio, Farrar, Cappel & Chozen, Richard B. Cappel, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, FORET and STOKER, JJ.
FORET, Judge.
Plaintiff, Robert Peloquin, filed suit on behalf of himself, his wife and their two minor children against Mr. and Mrs. Joseph A. Linscomb and the Calcasieu Parish Police Jury for damages for conversion of *1248 their pet cat, "George", for the value of the cat, and for mental anguish, inconvenience, and humiliation suffered due to the alleged actions of the defendants.
Mrs. Linscomb, a neighbor of the plaintiffs, borrowed an animal trap from the Calcasieu Parish Animal Control Center, an agency of the Calcasieu Parish Police Jury, placed it in her yard, and eventually succeeded in trapping a cat, allegedly "George". After trapping the cat, Mr. and Mrs. Linscomb returned the trap with the enclosed cat to the Calcasieu Parish Animal Control Center where it was destroyed. The defendants deny that the cat disposed of was in fact, the plaintiffs' cat.
Prior to trial on the merits, defendants filed exceptions of no right of action and no cause of action on the grounds that as the plaintiffs had no ownership interest in George they had no legal grounds to sue for damages for mental anguish, etc. occasioned by his alleged conversion at the hands of defendants. These exceptions were maintained by the trial court, leaving plaintiffs the right to sue for only the worth of the cat, which the court determined was less than the statutorily required amount necessary for a jury trial and thus also denied plaintiffs' request for same. Plaintiffs have appealed dismissal of this part of their claim; the remainder has not been tried in the district court.
Defendants have objected to this appeal, arguing that the exceptions maintained by the trial court were interlocutory judgments from which no appeal lies. This Court disagrees with defendants' contentions and holds that the judgment is a final judgment and plaintiffs are entitled to appeal. Article 2083 of the Code of Civil Procedure allows an appeal to be taken in cases where final judgment has been rendered and in cases where interlocutory judgment may cause irreparable injury. Article 1841 states (in part) that:
"A judgment that determines the merits in whole or in part is a final judgment". See also Cary v. Richardson, 35 La.Ann. 505 (1883); Voisin v. Luke, 142 So.2d 815 (La.App. 1 Cir. 1962).
In the present case, by maintaining the exception, the trial court has pronounced the final judgment on all the plaintiffs' claims save one. This clearly falls within the meaning of the above cited article:
"The final judgment need not dispose of all issues between the parties to be appealable." Talley v. Bradley, 177 So.2d 624 (La.App. 3 Cir. 1965); Devillier v. City of Opelousas, 243 So.2d 118 (La.App. 3 Cir. 1971).
Defendants also object to the granting of this appeal in that the trial judge signed an initial motion for appeal prior to his signing of the formal judgment. After signing the formal judgment on August 1, 1978, the trial court judge then signed another motion for appeal on August 8, 1978, which corrected the prior error in the record. Defendants' circuitous argument on this issue urges that the first motion for appeal was invalid but after having so been made, it deprived the trial court of jurisdiction so that the later motion for appeal after the formal judgment was signed is also invalid in that the first attempted motion for appeal removed the case from the trial court's jurisdiction. Obviously if the first purported motion for appeal was invalid as being signed before the formal judgment in the case, it would have no effect, and the motion for appeal signed on August 8, 1978, is valid.
Turning to the merits of the appeal, it is initially obvious that the exception of no cause of action maintained by the trial court must be overturned. The exception of no cause of action is to raise the question of whether any remedy is afforded by law. The exception of no right of action is to raise the question of whether a remedy afforded by law can be invoked by a particular plaintiff. Haskins v. Clary, 346 So.2d 193 (La.1977); Hero Lands v. Texaco, Inc., 310 So.2d 93 (La.1975); Taylor v. Castille, 318 So.2d 106 (La.App. 3 Cir. 1975), writ refused, 1975.
"An exception of no cause of action must be determined in the light of the well pleaded averments of plaintiff's petition, all of which must be accepted as true." Barnett v. Develle, 289 So.2d 129 (La. 1974); Haskins v. Clary, supra.
*1249 The plaintiffs allege their ownership of George and their subsequent dispossession of him by acts of the defendants. This in itself is sufficient to state a cause of action. The judgment of the trial court maintaining this exception is reversed.
We now turn to the exception of no right of action which was also maintained by the trial court. In addition to the facts hereinabove recited, it is stipulated by the parties that:
(1) appellants did not purchase the cat nor did they receive it as a gift;
(2) the Peloquins had possessed the cat for more than seven years since Mrs. Peloquin found it as a kitten in or near her yard;
(3) the Peloquins did not advertise the finding of the kitten in the newspaper or make other attempts to locate the owner except to ask their neighbors.
The trial court, citing Civil Code Article 3422[1], held that the Peloquins were not the owners of the cat and as mere possessors, did not have the right to sue for mental anguish, etc. suffered as a result of George's alleged demise at the hands of the defendants but could sue only for any actual damages (the worth of the cat).
Article 3422 is contained in the chapter of the Louisiana Civil Code entitled "Occupancy", which is defined in Article 3412:
Art. 3412. Occupancy is a mode of acquiring property by which a thing which belongs to nobody, becomes the property of the person who took possession of it, with the intention of acquiring a right of ownership upon it.
Further examination of this chapter reveals that property, subject to occupancy, may be acquired by possession of it for different periods of time, depending on the prior ownership status of the property. Article 3421[2] allows a person who acquires a movable that has been abandoned to immediately become its "master". Article 3415[3] allows the captor who reduces to possession a wild animal to immediately become the owner of the captured creature.
Mrs. Peloquin stated that approximately seven years prior to the disappearance of George, she had found him as a kitten while putting her children on a school bus. After first asking her neighbors if they had lost a kitten, the Peloquins raised George as a family pet. In applying Article 3422, the trial court must have determined that George was "lost" when taken in by the Peloquins; however, from the record this appears to be a factual determination that the jury should have had a chance to consider. It is at least as likely that George was either abandoned by his prior owner or perhaps never had an owner (a wild beast or animal?). Cursory observation of the streets of our cities reveals many "alley cats" which exist by their wiles without being owned by any person.
As an alternative argument, plaintiffs cite Louisiana Civil Code Article 3506[4], three year prescriptive period to acquire *1250 ownership of a movable. This Article is contained in the same Book III, Title XXIII of the Civil Code as the aforecited articles on occupancy; it is however contained in a different chapter than occupancy.
As defined by Article 3457:
Art. 3457. Prescription is a manner of acquiring the ownership of property, or discharging debts, by the effect of time, and under the conditions regulated by law.
Each of these prescriptions has its special and particular definition.
Article 3506 establishes the prescriptive period to acquire a movable possessed in good faith and with a just title as owner; while we are unsure what would suffice as a "just title" to such an animal as George, the mere taking possession of the creature is insufficient to constitute the required transfer of title. Such three-year prescriptive period might successfully be urged if the Peloquins had purchased or been given George by a person who claimed ownership of him but was not in fact such.
However, we do not decide this appeal on these grounds as we are persuaded by plaintiffs' further alternative argument that they should be allowed to sue for all claimed damages because of their status as George's possessor. Article 3450[5] of the Civil Code recognizes possession as a fact as well as a right and Civil Code Article 3454 provides:
"Art. 3454. Rights, which are common to all possessors in good or bad faith, are:
1. That they are considered provisionally as owners of the thing which they possess, so long as it is not reclaimed by the true owner or person entitled to reclaim it, and, even after such reclamation until the right of the person making it is established.

2. That every person who has possessed an estate for a year, or enjoys peaceably and without interruption a real right, and is disturbed in it, has an action against the disturber, either to be maintained in his possession, or to be restored to it, in case of eviction, whether by force or otherwise.
3. That such a possessor may, by prescription, acquire the property of the thing which he thus possesses, after a certain time, which is established by law according as he has possessed in good or bad faith."
(Emphasis added.)
It would thus appear that even as possessor the plaintiffs have the right to maintain their action against any but the true owner (if there is one) of the cat.
We are supported in this holding by a study of the tort of conversion upon which the plaintiffs' claims are based. Despite being a common law action, conversion has been recognized in Louisiana law under Civil Code Article 2315 for many years. Edward Levy Metals, Inc. v. New Orleans Public Belt RR, 243 La. 860, 148 So.2d 580 (1963); Importsales v. Lindeman, 231 La. 663, 92 So.2d 574 (1957); Bryant v. McCain, 297 So.2d 262 (La.App. 3 Cir. 1974); Lincecum v. Smith, 287 So.2d 625 (La.App. 3 Cir. 1973), writ refused, 290 So.2d 904 (La.1974); Martinez v. Therma-King Sales & Service Division of Transport Refrigeration of La., Inc., 346 So.2d 798 (La.App. 1 Cir. 1977); Deshotels v. State Wide Trailer Sales, 333 So.2d 259 (La.App. 1 Cir. 1976); Bostwick v. Avis Rent-A-Car, 215 So.2d 854 (La.App. 1 Cir. 1968); Madden v. Madden, 353 So.2d 1079 (La.App. 2 Cir. 1977).
The Restatement of Torts, Second, explicitly recognizes that the person who converts the chattel may be liable to the possessor of the chattel.[6] As stated in the comments to that section:

a. This Section states the rule as to liability to the possessor of a chattel for a *1251 conversion, committed as stated in § 223. The converter may also be liable to a person entitled to the immediate possession of the chattel as stated in § 225, or to one entitled to future possession of the chattel as stated in § 243.

b. It is immaterial that the one in possession of the chattel is not entitled to retain possession as against some third person, or that he has obtained possession wrongfully. See § 895.
In his discussion on conversion, Prosser[7] states:
". . . the man in possession recovers the full value of the chattel, although he may not be the full owner or any owner at all."[8]
Prosser notes that the reason for this lies in ". . . the convenience of treating the possessor as the owner, in the encouragement to peace and security expected to result from the protection of any possession against a wrongdoer with no rights at all".[9]
Prosser also notes that in the common law, the procedural method used is to disallow the defendant in a conversion action to set up as a defense the claim of a third party to the chattel, superior to that of the plaintiff, unless the defendant can connect himself with that claim (the "jus tertii").[10]
In French law, Aubry & Rau Property[11] state:
"The possession of corporeal things creates in favor of the possessor a presumption that he has legal title which the possession manifests. More precisely it has the following effects:
* * * * * *
(f) A simple possessor or even a precarious holder of a movable of whose possession he is deprived can recover it against a third party simple possessory in all cases in which the owner of the thing could do so."[12]
We conclude that a possessor has the same rights as an owner of a movable to sue for damages for conversion thereof by the defendant, and those damages may include awards for mental anguish, humiliation, etc. as well as special and/or actual damages. Lincecum, supra; Brown v. Crocker, 139 So.2d 779 (La.App. 2 Cir. 1962). Lincecum involved a puppy and Brown involved a mare. Both of these cases awarded damages for mental anguish, etc. as a result of injury to the animals involved. Admittedly these two cases involved owners of the animals, but we view the legal principle as the same. If plaintiffs can prove possession, and that they suffered provable and compensable damages as a result of the conversion of the cat involved, we are of the opinion that they are entitled to recover for these damages.
Whether plaintiffs in this case owned the cat in question, whether they possessed the cat in question as owner, and proving all other facets of their case, if they can prove damages, they are entitled to recover, unless defendant has a valid defense that would justify denial of recovery to the plaintiffs.[13] All of these factors are properly questions for the trier of fact, be it judge or jury, and the case should be remanded for trial in accordance with the views above expressed.
Accordingly, we reverse the judgment of the trial court, and overrule the exceptions of no right of action and no cause of action, and remand the case for further proceedings.
Costs of this appeal are assessed against the defendants. Costs in the trial court must await final outcome of this matter.
REVERSED AND REMANDED.
NOTES
[1] "Art. 3422. If he, who has found a movable thing that was lost, having caused it to be published in newspapers, and having done all that was possible to find out the true owner, can not learn who he is, he remains master of it till he, who was the proper owner, appears and proves his right; but if it be not claimed within ten years, the thing becomes his property, and he may dispose of it at his will."
[2] "Art. 3421. He who finds a thing which is abandoned; that is, which its owner has let [left] with the intention not to keep it any longer, becomes master of it in the same manner as if it had never belonged to anybody."
[3] "Art. 3415. Wild beasts, birds and all the animals which are bred in the sea, the air, or upon the earth, do, as soon as they are taken, become instantly by the law of nations, the property of the captor; for it is agreeable to natural reason that those things which have no owner, shall become the property of the first occupant.

And it is not material whether they are taken by a man upon his own ground or upon the ground of another. But the proprietor of a tract of land may forbid any person from entering it for the purpose of hunting thereon.
Wild beasts are those which enjoy their natural liberty, and go wherever they please."
[4] "Art. 3506. If a person has possessed in good faith and by a just title, as owner, a movable thing, during three successive years without interruption, he shall acquire the ownership of it by prescription unless the thing was stolen or lost."
[5] "Art. 3450. Although possession results frequently from a fact, and not from right, it nevertheless confers on the possessor certain rights with regard to the thing possessed, some of which are peculiar to the possessor in good faith, and the others are common to all possessors."
[6] § 224 A. Liability to Person in Possession

For a conversion the actor is subject to liability to another who was at the time in possession of the chattel.
[7] Law of Torts, 4th Ed.
[8] Ibid, pg. 95.
[9] Ibid, pg. 95.
[10] Ibid, pg. 94.
[11] Droit Civil Francais, Vol. II, 7th Ed., Civil Law Translations 2 (1966).
[12] Ibid, pg. 105.
[13] See Stone, La. Civil Law Treatise, Vol. 12, Tort Doctrine, Section 249, et seq.