The facts developed on trial of this case and the issues of law presented are ably set forth in the reasons for judgment assigned by our distinguished brother of the District Court, which we quote in full as follows:
"Plaintiff, the Department of Highways of the State of Louisiana, sues to recover damages in the sum of $582.84, alleged to have been caused by the negligent use of a bridge located on State Route No. 1061 in Catahoula Parish, by the defendants. The defendant, J.M. Jones, is a non-resident and the owner and operator of a fleet of logging trucks and for the last two years have been operating in the vicinity of said bridge in Catahoula Parish. The defendant, Benny Washington, is an employee of J.M. Jones and was the driver of the logging truck at the time of the accident and collapse of the bridge aforesaid. On September 17, 1945, defendant's logging trucks while transporting and hauling timber logs from the woods to the loading camp or station, allegedly caused the collapse and damage to the bridge aforesaid by crossing thereon with a heavy load of logs. Plaintiff contends that the damage was due solely to defendant's negligence in that it was or should have been apparent to anyone, particularly to J.M. Jones and his employees and among them, Benny Washington, that the bridge was entirely too frail for such heavy traffic; that the bridge here was old and the road was a settlement or dead end road, never designed or intended for such heavy traffic as is now transported in modern log trucks; that the defendant did not use the bridge with the degree of care required, and is therefore liable for damages caused.
"Defendant's answer is a general denial of any liability and their defense on trial of the issue is based upon the contention that plaintiffs contributed to the cause of the accident by failure to keep the bridge in the proper state of repair and failure to give proper notice or post proper signs designating the load limit of the bridge.
"On trial of the issue, the evidence revealed that the bridge in question was constructed more than twenty-five years ago in a thinly settled farming locality and on a road designed to furnish an outlet for such inhabitants. The bridge was primarily designed to support such traffics and weights customary for that time and for the locality it served. This road is classed as an inferior third class dead-end road. For these purposes the evidence is conclusive that the bridge was evidently well constructed. The defendant testified that the bridge had been used for more than two years by them, and during this time heavy traffic in enormous truckloads had passed thereon. From this evidence it must be conclusively presumed that the bridge was of most excellent construction for the purpose designed. There is evidence that at the time of the accident some of the fillers and flooring were decayed. *Page 830 
However, it is the Court's understanding that these defects could not have affected the strength of the bridge or contributed to the cause of the accident. The bridge was constructed of steel, the flooring and fillers were of wood, the fillers were bolted to the steel stringers and the flooring nailed to the fillers. These wood fixtures were not designed to and did not bear any weight or strain.
"It is the duty of the plaintiff to maintain the bridges of the highway of this State as to reasonably insure the safety of the traveling public, and any dereliction in this duty is a contributing negligence where such dereliction attributes to the cause of the accident. It so happens that not all the highways and highway bridges of our State are of the same standard; some are old, but were excellent for their time; they were not designed or contemplated for use by present-day enormous tonnage carrying vehicles. Some are new and modern and constructed to withstand and support enormous weights. It is further the duty of the plaintiff to properly and sufficiently warn the traveling public by proper signs and signals of any highway or bridge not suitable for modern heavy traffic.
"But at the same time it is equally the duty of the travelling public to use the highways and bridges of the State with reasonable care. Dept. of Highways v. Fogleman et al.210 La. 375, 27 So.2d 155.
"In the present instance it is conclusively established that the highway and bridge in question was never designed or intended for use by a fleet of modern high speed, high tonnage log trucks as that used by these defendants, and that this fact was most apparent to the traveling public and particularly to these defendants. Under the facts and circumstances of this particular case the Court is forced to conclude that these defendants did not use this bridge with the reasonable care required of the traveling public. On the contrary, they were totally unmindful and indifferent to the interest of preserving public property; that a reasonable person would and should have foreseen.
"But Defendant urges that plaintiff was also derelict in its duty in that it is conclusively proven that no notice, sign or warning of the weight capacity of the bridge were even given or made by the plaintiff. That by reason of this omission, plaintiff contributed to the cause of the accident. For support of the argument, the Fogleman case above cited is urged as decisive of the issue. The facts of the Fogleman case are not analogous with those of the present case. In that case, defendant's truck was required to detour from a first class highway to an inferior bridge. In creating this detour, the inferior bridge thereon was automatically made a connecting link and a part of a first class highway. It was most clearly the duty of the plaintiff to give warning of a load limit, and its failure therein was most correctly held to be the contributing cause. In the present case, instead of a detour link of a first class highway, we have a dead-end or settlement road, the bridge thereon constructed many years ago adapted and sufficient for the normal uses of such road, but most apparent and patent to everyone as not adequate and sufficient for abnormally heavy traffic such as that used by these defendants.
"Unlike that of the Fogleman case, the defendants here are not in the ordinary and full sense of the word a 'traveller' or the the 'traveling public'. Defendants here owned and operated a logging camp in the vicinity of this road and bridge. They used it, not as an isolated single passage, but over a period of time as an integral part of their business of transporting unusually heavy logs, and this notwithstanding the apparent inferior design. The failure of the plaintiff to post signs of load limit on this bridge is unquestionably negligence on its part but under the facts and circumstances here it would be most difficult to find or conclude that this negligence was a contributing cause of the collapse of the bridge.
"For the reasons above assigned, plaintiff should have judgment as prayed for, and it is so ordered."
While we are in complete accord with the statement of facts as set forth by the *Page 831 
District Judge, we think it essential to call attention to certain other facts which we deem to be pertinent and material. First, we find that the load which was being hauled over the bridge in question at the time of the collapse was of considerable lesser weight than the average load which defendant's trucks were accustomed to transport over this same road and across this same bridge. The explanation of this fact is logically set forth as being due to the condition of weather at the time, which made the hauling of heavier loads from the swamps where the timber was being cut impracticable. At the time of the accident the truck involved was bearing only three cypress logs, whereas the average, usual and customary load consisted of five or six logs. In our opinion serious consideration should also be given to the fact that the testimony of one of the witnesses showed that he had been accustomed to crossing the bridge nearly every day for four years and, in fact, had crossed the bridge with a loaded truck of some eight thousand pounds, the same day the accident occurred.
Summing up the facts bearing upon the use of the bridge, we are impressed that for a period of four or five years heavily loaded gravel, logging and oil trucks were accustomed to use the road and the bridge as a matter of course; that school buses loaded with children traveled this road; and that for at least two years defendant's heavily loaded trucks had been using the road and the bridge in conjunction with logging operations in the course of which operations some fifty or sixty loads were hauled daily on an average of four days per week.
While we observe with interest and agree in general principle with our brother of the District Court, we take issue with him on certain specific points which persuade us to a conclusion which is directly at variance with his judgment.
[1] While it is true that some of the highways, roads and bridges maintained by the Department of Highways are old and were not originally designed or contemplated for use by the enormous tonnage-carrying vehicles of the present day, we do not conclude that the Department of Highways as an agency of our State is thereby relieved of all responsibility. Conceding the practical impossibility of the maintenance of all highways, roads and bridges under the control and supervision of the Department in such condition as to accommodate unlimited tonnage, there is certainly, in all reason, a duty and obligation devolving upon the Department to properly warn the traveling public as to the limitations of the less modern sections of its state-wide system.
[2] It must be borne in mind that the case before us does not reflect an isolated instance which concerns the lack of care or negligence on the part of one who unwisely and recklessly attempts to negotiate the passage of a frail structure with a heavily loaded vehicle. Quite the contrary is true, under the facts of this case. Tremendous, loads had been safely transported over this same bridge for a period of years. Certainly the plaintiff had or should have had knowledge of this fact. It is also true in this connection that the plaintiff had the best opportunity and certainly was chargeable with the duty of determining the maximum stress, strain and load capacity of the bridge structure herein concerned. Then, to our minds, it became the clear duty of plaintiff to warn traffic of the limitations as to the margin of safety, and its failure so to do must be considered negligence which directly contributed to the accident and therefore bars recovery.
We think it proper to point out in this case that it is not our intent nor do we purport in any sense to find that defendants were completely free of negligence, but we specifically limit the application of our findings to the affirmation of the defense of contributory negligence.
In arriving at the conclusion expressed herein, we are deeply sensible of the expressions in the opinion of the Supreme Court in Department of Highways v. Fogleman et al., 210 La. 375,27 So.2d 155, 157, particularly in view of the fact that one of the members of this Court, who participates in the consideration and determination of the case at hand, was the author of the opinion in the Fogleman case. We find nothing inconsistent in our reasoning with the principle expressed in *Page 832 
the Fogleman case to the effect that: "One who proposes to transport an unusual or undue load over a public bridge, particularly on a secondary route, is under the duty to exercise care and caution. In the absence of such care, a person driving such vehicle assumes the risk of injury to himself and cargo in trying to pass over the bridge."
In the present case we pretermit any consideration of the lack of such care and caution as might sustain a finding as to the assumption of risk of injury to the driver and his cargo. It might well be that defendant was guilty of such negligence as would have precluded the recovery of damages which he might have sustained. But this is not such an action, and it appears exceedingly clear to us that, conversely, the plaintiff herein is chargeable with the result of its failure to take and maintain reasonable precautions which would have prevented damage to its own property, for which it now seeks recovery.
For the reasons assigned, the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendants, J.M. Jones and Benny Washington, rejecting the demands of plaintiff.
There is further judgment dissolving the writ of attachment herein issued and releasing the property seized thereunder. Stenographer's costs are to be paid by plaintiff.
Judge Taliaferro recused.