81 So.2d 48 (1955)
F. I. DOWDEN, Plaintiff-Appellee,
v.
STATE of Louisiana, Through the Department of Highways, Defendant-Appellant.
No. 8319.
Court of Appeal of Louisiana, Second Circuit.
May 18, 1955.
Rehearing Denied June 22, 1955.
*50 W. Crosby Pegues, Jr., D. Ross Banister, Philip K. Jones, Baton Rouge, Francis X. Vinet, New Orleans, Louis S. Quinn, Joseph A. Loret, Baton Rouge, for appellant.
Pickett & Pickett, Many, for appellee.
AYRES, Judge.
This is one of seven separate actions in tort instituted by as many individuals against the State of Louisiana through the Department of Highways as the result of two separate accidents occurring on Highway No. 173, a state graveled highway, near the community known as Old Peason, Sabine Parish, Louisiana, at about 9:00 o'clock P.M. and 12:00 o'clock midnight, respectively, Saturday, December 23, 1944. Each of the seven plaintiffs alleged that the accidents were caused by the negligence of the Highway Department in failing to maintain proper precautions or warning signs, signals or devices at or near a point on the highway where the Department had torn out and removed a bridge so as to make the highway impassable at that point and to constitute an extremely dangerous condition, although the highway was left open so that motorists traveling thereon had no warning of the existence of such situation.
The defendant, after filing and urging, to no avail, pleas and exceptions to the jurisdiction of the court, both ratione personae and ratione materiae, immunity from suit, and of no cause or right of action, answered admitting and alleging "* * that prior to the alleged time of the alleged accident mentioned in said original petition in order to repair a bridge on State Highway 173 in the Parish of Sabine, State of Louisiana, near the Peason old sawmill site, respondent, through its agents, servants and employees, tore out said bridge from over the waterway which it crossed and left said highway without any bridge across said waterway until after the time that said alleged accident is alleged in said original petition to have happened, thus leaving a gap in said highway from the time said bridge was removed until after the said alleged time of said alleged accident, which gap was impassable; and that there was no watchman provided by respondent in the neighborhood of said gap during the night on which said alleged accident is alleged to have happened, but there was a detour provided around said gap," and contended that the site of the construction work was properly safeguarded, specifically by (1) a bridge out sign, (2) a barricade, (3) a dirt levee four feet high across the highway, (4) warning signals properly maintained, and (5) a detour road leading off the highway at a point 30 feet, more or less, from the torn out bridge.
For lack of information, the happening of the alleged accidents and that plaintiffs were injured thereby were denied by defendant as was the negligence of any of its employees proximately causing the accident, if, in fact, it should be determined *51 that such occurred. Defendant charged the plaintiffs with negligence constituting the proximate cause of the accidents, or, in the alternative, with contributory negligence barring their recovery.
The plaintiffs were authorized by special acts of the Legislature, Acts 220, 221, 222 and 249 of 1948, to institute these actions against the State, which actions differ only as to the character, nature and extent of the injuries allegedly suffered by them.
From the judgments in favor of each of the plaintiffs, the defendant appealed to this court.
While the pleas and exceptions were neither argued nor briefed in this court and, consequently, may properly be considered as abandoned, nevertheless, we may state that we have recently had the occasion to consider similar pleas and exceptions and found them without merit. See Stepan v. Louisiana State Board of Education, La.App., 78 So.2d 18, and Marler v. State, La.App., 78 So.2d 26.
State Highway No. 173 was at the time of the accident a graveled highway connecting the communities of Kisatchie and Florien, about 20 miles apart. The Department of Highways was reconstructing all of the wooden bridges on that road and was at the time in the process of rebuilding the particular bridge where the accidents occurred. The bridge had been torn out, dirt from the abutments piled near the end of the bridge in the highway and a piece of timber of a size 3" × 10", the length of which was not shown, was laid only partially across the road opposite the bridge from the pile of dirt. A part of the framework of the new bridge had been constructed. A plank detour bridge had been constructed nearby across the creek, but the detour thereto was somewhat inconspicuous and unnoticeable, especially at night. The 3" × 10" timber contended by the defendant as constituting a barricade could hardly be considered as such. The alleged levee of dirt likewise across the highway is not shown to have been a levee or to have extended across the highway, but on the contrary appears to have consisted only of a low mound of dirt thrown out by the workmen in the course of their excavation or digging operations. This was not shown to have been intended as a precautionary measure. The evidence fails to establish there was either a detour sign or a bridge out sign, as contended by the defendant and disputed by the plaintiffs.
The testimony of defendant's witness, Ralph F. Burnett, bridge foreman on the work at the time of the accidents, is most unconvincing and fails to establish with any degree of certainty that any substantial precautions were taken to warn the traveling public that the bridge had been removed. This witness testified, not from any independent knowledge or recollection, but from custom and general practice in such matters. This character of testimony is entirely inadequate to overcome the positive and direct testimony of the several plaintiffs to the contrary, from whose testimony we are convinced there was neither a detour sign, a bridge out sign, flares or other warnings, nor a barricade in any form. The bridge was, therefore, left open without a watchman, lights, flares or other adequate warning signs or signals.
With the bridge in this condition, the bridge crew had departed for the Christmas holidays. As to the last day the crew worked, Burnett's testimony does not establishhe did not recall whether it was the day before the accident or not. He was apparently certain none of the crew were on the job the day of the accidents. Neither did he know the day he returned after the holidays. While he testified the flares were customarily left lighted with sufficient oil for 24 to 48 hours, it is not shown at what hour or day they were lighted or that the 48 hours limit had not previously expired before the first accident. This again is insufficient to overcome the positive testimony of the plaintiffs that no flares were burning.
The danger of this open bridge was further aggravated for motorists approaching *52 from the south because of a hill over which motorists traveling from that direction had to pass immediately before descending to the creek. With the bridge out, there was in reality an open hole or section below the road level concealed by the general topography and contour of the area in such a manner that it was next to impossible for an unsuspecting motorist to become aware of it, regardless of his alertness, until he was too close and it was too late to avoid it.
As was stated in Reeves v. State of Louisiana, La.App., 80 So.2d 206:
"There is a mandatory statutory duty of the Department of Highways to erect and maintain proper and adequate signs, signals and warning devices necessary for informing, directing, cautioning and warning the traveling public of any unusual situation or dangerous condition on the highways or to its approaches which may impede or obstruct the safety of traffic."
The aforesaid conditions constitute such obvious and serious obstructions and dangers as are contemplated by the statute referred to, LSA-R.S. 48:345, which, in part, reads as follows:
"The department shall erect and maintain all signs, signals, or devices necessary for informing, directing, cautioning, and warning the traveling public."
Observations made in Reeves v. State of Louisiana, supra, are very appropriate here. There it was stated:
"The due care therefore owed by highway authorities to motorists requires the posting of notices and signs warning them of dangerous conditions. The general rule is stated in 60 C.J.S., Motor Vehicles, § 192, page 530:
"`While the exercise of reasonable care by highway authorities toward motorists may require a placing of signs warning of dangerous conditions, as where there are obstructions or excavations in the way, or the highway terminates abruptly, or a bridge has been destroyed, warning signs need not be maintained at places which do not present an extraordinary condition or unusual hazard, as, for example, at curves of an ordinary character in the highway. Warnings or notices need not be given where the physical facts give sufficient warning of the danger. Where a barrier gives ample and timely warning of the dangerous condition of the road, there is no duty devolving on those in charge of the highway to post notices of the condition of the road some distance therefrom. In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road.' [Emphasis supplied.]
"To the same effect are the decisions in Department of Highways v. Fogleman, 210 La. 375, 27 So.2d 155; Department of Highways v. Jones, La. App., 35 So.2d 828; De Hart v. State, La.App., 46 So.2d 366; Rosier v. State, La.App., 50 So.2d 31; Goodwin v. Department of Highways, La.App., 53 So. 2d 161, and Davis v. Department of Highways, La.App., 68 So.2d 263.
"In general, the duty imposed upon a state and/or its department of highways or other appropriate authority is to construct and maintain highways which are reasonably safe for public travel of the usual kind and character, having in view the character and location of the road and the amount and nature of the traffic. For instance, it is stated in 40 C.J.S., Highways, § 254 (b), page 293:
"`In general the duty imposed on the highway authorities is to maintain *53 the highways in a condition reasonably safe for travel, having in view the probable traffic and the character of the road and the use reasonably to be anticipated. So, in determining whether a highway is in a reasonable state of repair, its location and character and the extent of travel thereon are to be considered.
"`The duty to keep the highway in a reasonably safe condition means safe for general or ordinary travel, or use for any lawful and proper purpose, including use for both pedestrians and vehicles, such as bicycles and motor vehicles, * * *.
"`The duty is to keep a highway safe for a traveler himself exercising ordinary care, and a highway will be deemed safe within the usual requirements if it may be negotiated successfully by all but the most reckless and careless drivers, as there is no obligation so to construct and maintain highways as to insure the safety of reckless drivers, * * *.
"`Under principles of law imposing liability for defects in highways, any road not reasonably safe for the reasonable use of the traveling public will be deemed defective, a "defective road" within the meaning of statutes permitting civil actions for recovery of damages for injuries sustained by means of a defective road being defined as one not reasonably safe for travel in view of the purposes for which it is needed and used. Conversely, a road claimed to be defective must be not reasonably safe for public travel. Omission to supply statutory safeguards on a highway constitutes a defect within the meaning of statutes of this character.'
See also Preuett v. State, La.App., 62 So.2d 686.
"The general rule is also well established and recognized in the jurisprudence of this state that a motorist using a public highway has a right to presume and to act upon the presumption that the highway is safe for the usual and ordinary traffic, either in daytime or at night, and that he is not required to anticipate extraordinary danger, impediments or obstructions to which his attention has not been directed.
"Blashfield's Cyclopedia of Automobile Law and Practice, Volume 5A, 387, `Highways', § 3320, states such rule as follows:
"`In the absence of notice to the contrary, there are certain assumptions which may be indulged by a motorist as to the condition of public streets and highways, whether he be traveling by day or night. Among these are: (a) That the way is reasonably safe for travel and free from defects and unlawful obstructions; (b) That those charged with the duty of keeping it so have exercised a proper degree of diligence in so doing; (c) that it will not be obstructed unlawfully or in such a manner as to cause an injury to him while he is in the exercise of due and reasonable care; * * *.'
See also Jacobs v. Jacobs, 141 La. 272, 74 So. 992, L.R.A.1917F, 253; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1.
"In Rosier v. State, supra, this court held the highway authorities negligent in failing to erect a barricade across a flooded highway, although a sign was erected a mile away proclaiming `"Road Under Water, Travel At Your Own Risk."' It was concluded that such negligence was the proximate cause of the accident when a car driven onto the flooded portion of the highway was swept over the road embankment. There it was held that the duty of maintaining the highway in a safe condition includes the duty of providing proper safeguards or giving adequate warning of dangerous conditions in the highway; that in determining what is *54 a reasonable warning the place at which the danger exists, the nature of the highway and the general situation and circumstances surrounding it are to be taken into consideration, as well as the kind of travel and the speed at which vehicles will probably travel; that due care may require the safeguarding of dangerous places by the erection and maintenance of suitable barriers, guard rails or fences; and that negligence on the part of the highway authorities may be predicated on their knowledge or information of the existence of a dangerous or defective condition of the highway without proper safeguards.
"We find these rules applicable to the situation here as the highway authorities had knowledge of and recognized the unusual danger existing at the end of the pavement on U. S. Highway 65 at the Arkansas line. Several barricades had been erected there. The last one erected was, to the department's knowledge, and that of its employees, demolished two months before the accident and was never replaced, notwithstanding only two weeks before the occurrence of the accident presently involved, another serious accident happened at the same location.
"In Goodwin v. Department of Highways, supra, the defendant was held negligent by failing to erect adequate warnings of a washed out bridge. No warning signs were posted, and the motorist proceeded around a curve up a slight grade at night and crashed through a fence erected across the highway approximately 20 feet from the wash-out, plunging himself and car into the swift, swirling waters of a river.
"In De Hart v. State, supra, the Department of Highways was held negligent in laying a culvert across the road covered with a mound of dirt approximately 7 inches above the road surface, where there were no warning signs, when a motorist struck his head on the top of his automobile when the vehicle severely bounded as it passed over the culvert.
"While no hard and fast rule can be laid down as to the type of warning or barricade that should be erected or maintained by the highway authorities to warn the public of such hazards, the warnings and means of protection should be of a size and nature commensurate with the danger that lies ahead. For instance, where the pavement ends, such as it did here, with the adjoining surface considerably below the paved surface, a complete barricade should be erected and properly lighted, at appropriate and safe distances from such dangers. Warning and detour signs should have been erected and maintained."
A résumé of the facts of these cases, viewed in the light of the statutory duties and obligations of the highway authorities, leaves no doubt of the gross negligence of the Department of Highways and its employees in their failure to provide adequate barricades and warning signals and devices for motorists of the aforesaid dangerous conditions existing at the scene of the accidents. It is difficult to comprehend a more dangerous condition existing in a highway than an unguarded torn out bridge at the foot of a hill. Moreover, plaintiffs' observation that the objects, a mound of dirt and a piece of timber laid across the highway, instead of constituting precautionary measures against the happening of accidents are in fact obstructions to safe travel and conducive to accidents, and that such in themselves alone, when placed, as these were, on a highway, would on the happening of an accident caused thereby, constitute actionable negligence, is not without considerable merit. De Hart v. State, La.App., 46 So.2d 366; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1. We conclude, as did the trial court, that such negligence on the part of the Department of Highways and of its *55 employees constitutes a proximate cause of the accidents forming the basis of these actions.
Next for consideration is defendant's charge of negligence against plaintiffs as constituting a proximate cause of the accidents or, in the alternative, contributory negligence, barring recovery. Such pleas, if possessing merit, would only have application to the drivers of the motor vehicles, who were solely in charge of the cars and their operations. This contention has no application to the other occupants, guests in the automobiles, who had no authority or control over the vehicles or their operation. A prerequisite, however, to a consideration of this defense is an understanding of the facts of the occurrence of these accidents considered in connection with the situation at the scene of the accidents.
The plaintiff, Furman I. Dowden, as the driver, accompanied by his wife, three children and a soldier, was traveling in a motor vehicle to which was attached a trailer loaded with 16 goats, proceeding in a northwest direction at a moderate speed of from 25 to 30 miles per hour. After passing the hill they continued down-grade towards the creek and on nearing the bridge plaintiff saw the timber lying in the highway, which he attempted to pass by, but, in doing so, ran into the open bridge, whereupon the car turned over on its side, a complete over-turn being prevented by the trailer stopping in such position so as to support the car. Notwithstanding the weather was foggy and the driver had his lights on dim, which in the darkness limited his vision, and the color of the mound of dirt and of the old timber removed from the bridge blended with the surface of the highway, the evidence does not disclose how the driver could have any sooner apprehended the dangers in the absence of the fog. This condition of the weather under the facts existing here was neither a proximate nor a contributing cause of the accidents.
Approximately three hours later, L. C. Dowden, accompanied by Arnold E. Dowden, whose car he was driving, and two young ladies, traveling in the same direction as the first car and under very similar circumstances and conditions and at about the same rate of speed, also ran into the open bridge. The timber, however, having been struck and knocked around by the first car, was lying lengthwise of the road. The presence of the mound of dirt was not discovered until the car was about 20 feet from it, when the driver applied his brakes and made an effort to stop, but, due to the lack of time and sufficient opportunity to do anything effective, he was unable to prevent the accident or to avoid running into the creek and onto the other wrecked car and trailer.
The drivers of the vehicles involved in these accidents had the right to presume and to act upon the presumption that the highway was safe for the usual and ordinary traffic, even at night, and that they were not required to anticipate extraordinary dangers, impediments or obstructions to which their attention had not been directed. They had no reason to anticipate, nor could they have been charged with any legal obligation of anticipating, that the passage had been completely blocked by the employees of the Department of Highways in removing the bridge. The speed at which they were proceeding was neither unlawful nor excessive but very moderate, under the circumstances, even though the weather was somewhat foggy. Cox v. Louisiana Department of Highways, La. App., 25 So.2d 824; Taylor v. Fidelity & Casualty Co. of New York, La.App., 55 So.2d 307. Obviously, the dirt and the timber from the old bridge at night resembling in color and appearance the graveled surface of the road, added to the difficulty of a motorist in detecting the conditions. The record, therefore, fails to support defendant's charge of negligence against plaintiffs, either as a proximate cause or as a contributing cause of the accident. Consequently, the defendant should respond in damages for whatever injuries were sustained *56 and pain suffered by plaintiffs as a result of the aforesaid accidents.
In this particular case, plaintiff, Furman I. Dowden, itemized damages as follows:

1. Medical expense $ 40.00
2. Pain and suffering, past,
 present and future 1000.00
3. Temporary and permanent
 injuries to left chest and
 back and loss of earnings 2000.00
4. Damages to automobile 215.38
 ___________
 Total $3255.36

As evidently found by the trial judge, proof of the medical expenses and damages to the automobile was insufficient and no allowance was made therefor. No error appears in this finding.
Defendant strenuously stresses that the award was excessive, and calls attention to the jurisprudence that the burden is upon plaintiff to establish his claims to a legal certainty and by a reasonable preponderance of the evidence, and that speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment, citing Franks v. Department of Highways for Louisiana, La.App., 43 So.2d 491; Roberts v. M. S. Carroll Co., Inc., La.App., 68 So. 2d 689; Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602, and Higgs v. Monroe, La.App., 77 So.2d 555. That these principles are well established in our jurisprudence is not open to question.
According to the testimony of this plaintiff he sustained an injury to the lower left side of his back and to his chest when thrown against the steering wheel, and as a result of which it was some two to three months before he could resume work. He did not consult a physician until January 13, 1945, when he called upon Dr. O. L. Sanders, who testified that he found a tenderness on the left side of plaintiff's chest at the level of the 10th rib on the mid-axia line and a friction rub on deep inspiration, which in his opinion was only a temporary condition requiring only six to eight weeks to completely clear up. On behalf of the defendant, plaintiff was examined by Dr. S. W. Boyce in 1952, at which time Dr. Boyce found plaintiff entirely and completely recovered, with no after-effects flowing from the accident.
While there is no hard and fast rule for the determination of awards in personal injury cases, each case necessarily having to be considered upon its own merits, yet some degree of uniformity, so far as possible, is desired in cases of comparable nature. We are of the opinion that an award of $750 is adequate to compensate plaintiff for the injuries, suffering and disabilities sustained.
The judgment appealed is therefore amended by reducing the award to $750 and, as thus amended, is affirmed.
Plaintiff is taxed with the costs of this appeal.
Amended and affirmed.