AYRES, Judge.
This is an action for workmen’s compensation, as provided in cases of permanent and total disability. The basis of plaintiff’s claim is that he suffered a heat stroke or heat exhaustion June 9, 19S6, with recurrences on June 11 and 12, 1956, which aggravated a pre-existing state of psychoneurosis. The defendants are plaintiff’s alleged employer and his compensation insurance carrier, who deny plaintiff sustained injuries in a compensable accident or that he was disabled as a result thereof. The insurer further contends that the insurance policy did not become effective until a date subsequent to that of the alleged accident.
From a judgment rejecting plaintiff’s demands as to the insurer but awarding him judgment against the employer for $3 per week for 400 weeks as for partial permanent disability, plaintiff appealed. The employer, in answering the appeal, prays that plaintiff’s demands be rejected in toto.
The record establishes that plaintiff was engaged as a carpenter in remodeling and/or repairing a residence on Monrovia *532 Street in the City of Shreveport. Whether he was an employee of the defendant, Brogdon, or was a sub-contractor in the performance of the carpentry work is immaterial. Nevertheless, on Saturday, June 9, 1956, plaintiff was engaged in putting up siding of yellow pine lumber. Much of his labor was performed from a scaffold erected alongside the building. Being without a helper, plaintiff was assisted by one Sam Strauss, who lived nearby and who was the father of the lady owning the residence under repair. Strauss’ assistance consisted of handing plaintiff the lumber and other materials used in said work. The work continued until 1:00 or 2:00 o’clock P.M., when plaintiff left, telling Strauss he would return.
With reference to the possibility of the occurrence of the accident, plaintiff testified that he seemingly got a little too hot while working in the sun and became sick at his stomach and dizzy, whereupon he came down from the scaffold and lay down a while. This was denied by Strauss, who testified plaintiff did not lie down or make any complaint as to illness until he returned the following week.
After leaving the job, plaintiff drove to his apartment, picked up his family and started to his home in Hornbeck, Louisiana, and on reaching Mansfield stopped because his feet and legs went “to sleep”. Although not feeling well but continuing on his trip, he also stopped at Many, Louisiana, where he “fell out”, on account of which he sought medical attention at the Fraser Hospital. Refusing the treatment advised by Dr. N. U. Booker, he continued to Horn-beck. Still experiencing difficulty, however, he returned to the Fraser clinic and was hospitalized for the night. On Sunday afternoon he and his family were driven back to Shreveport by M. E. Cox, a fellow employee.
Plaintiff reported for work on Monday and worked until the afternoon removing a partition, when he discontinued work claiming to have gotten too hot again. He again reported for work on Tuesday, whereupon his experiences of the day before were repeated, after which he drove to his sister’s residence on Fairfield Avenue and was conveyed to the Confederate Memorial Hospital.
The first doctor to see and treat plaintiff following the alleged incident of June 9 was Dr. N. U. Booker of the Fraser Hospital in Many, who says plaintiff complained of having become over-heated. From his examination, the doctor ascertained that plaintiff’s “general physical condition was normal — he had a regular slow pulse, breathing normally, blood pressure was normal, temperature was normal.” An impression was created, however, at the time that plaintiff might have gotten overheated temporarily and suffered some slight heat exhaustion but not of a serious nature, wherefore the Doctor testified: “As far as the heat exhaustion went, it was a very mild type of a thing”, and continuing, he observed :
“ * * * now, I do not think this man had a heat stroke and I thought I made that clear — he had a mild form of becoming over-heated — a mild state of over-heating with maybe excess fluid and salt loss which did not develop into a heat stroke.”
This condition, according to the Doctor’s opinion, was a very mild heat exhaustion. This opinion was predicated largely and almost entirely upon the subjective complaints made by plaintiff. From the examination, however, nothing clinically or organically was found wrong with plaintiff. Neither was plaintiff found disabled, either totally or partially, due to heat exhaustion, which, in the doctor’s opinion, would only endure ordinarily for a day or so. When discharged about 4:00 o’clock P.M. on Sunday, plaintiff had apparently recovered.
Dr. M. S. Stevens, a general practitioner of Hornbeck, who examined and treated plaintiff subsequent to June 9, 1956, when he was observed to be extremely nervous, was of the opinion plaintiff’s nervous condi *533 tion was aggravated by heat exhaustion. The opinion, however, was predicated upon plaintiff’s subjective complaints. The Doctor was familiar with plaintiff’s family history and confirmed his nervous condition existed long prior to the occurrence of the incident of June 9.
Plaintiff was also examined May 14, 1957, by Dr. Thomas L. Young, a psychiatrist of Shreveport, Louisiana, who diagnosed plaintiff’s condition as psychoneurosis, a pattern of behavior developing over the course of the developmental years of a person, which, however, in his opinion, would become more pronounced, or could be aggravated, through strain or accident, or by a heat stroke or heat exhaustion. In the formulation of his opinion, the history of plaintiff’s case, as detailed by plaintiff, as well as his subjective complaints, were taken into account. However, the Doctor could not conclude that plaintiff’s mental condition had any connection with, or was caused by, the incident wherein plaintiff claimed to have sustained a heat stroke or heat exhaustion. Neither did he believe that plaintiff actually suffered a heat stroke, one of the immediate results of which was said to be a state of mental confusion, that is, perplexity, bewilderment, and impairment of ability to understand events presently occurring, with the party occasionally becoming delirious and suffering headaches and partial or total impairment of consciousness, together with body temperature well above the normal range. Plaintiff made no serious complaint as to the existence of these symptoms to Dr. Booker, who examined him on the afternoon and night following the inception of plaintiff’s alleged difficulty, nor subsequently to either Dr. Stevens or Dr. Young.
The record is barren of proof of the existence of symptoms which would sustain a conclusion that plaintiff suffered either a heat stroke or heat exhaustion.
The issues presented for determination are factual in nature. A painstaking review of the record has only served to convince us that plaintiff has not sustained his burden of proof in establishing that a compensable accident occurred or that, if so, any disability with which plaintiff may now be suffering has any causal connection with such accident, or incident, or arose out of his employment. Plaintiff’s evidence as to the occurrence of the accident relied upon is not only wholly uncorroborated but is contradicted by the only other person present at the time it was said to have occurred, and the medical opinions are based entirely upon plaintiff’s subjective complaints and details of the occurrence as related by him and from his family history.
The jurisprudence is well settled that a plaintiff in a workmen’s compensation case carries the burden of proof as in other civil cases and is required to establish his claim to a legal certainty by a reasonable preponderance of the evidence; that the establishment of such a claim only to the extent of possibility or even probability is insufficient; and that speculation, conjecture, mere possibility and even unsupported probability are not sufficient to support a judgment. Green v. Heard Motor Co., Inc., 224 La. 1077, 1078, 71 So.2d 849; Keener v. Fidelity & Casualty Co. of New York, La.App., 96 So.2d 509; Davis v. Reynolds, La.App., 96 So.2d 368; Robbins v. Chicago Mill & Lumber Co., La.App., 76 So.2d 635; Smith v. International Paper Co., La.App., 73 So.2d 652; Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602; Roberts v. M. S. Carroll Co., Inc., La.App., 68 So.2d 689; Hogan v. Stovall Drilling Co., Inc., La.App., 55 So.2d 284.
The conclusions reached dispense with the necessity of giving consideration to Brogdon’s defense that plaintiff was not an employee of his at the time of the alleged accident, nor to the insurer’s defense that the alleged accident antedated the effective date of the insurance contract. Neither the trial court nor able counsel have informed us of the basis of the conclusion reached below, that plaintiff was partially permanently disabled in a compensable ac *534 cident. We have been unable to discover any basis therefor.
Accordingly, the judgment appealed is annulled, avoided, reversed and set aside, and it is now ordered, adjudged and decreed that plaintiff’s demands be and they are hereby rejected and his suit dismissed at his cost.
Reversed.