REGAN, Judge.
Plaintiff, Delmone Humphrey, employed as a janitor, instituted this suit against the defendant, Hartford Accident & Indemnity Company, insurer of Falstaff Brewing Company, his former employer,.endeavoring to recover workmen’s compensation at the rate of $35 per week for a period of 400 weeks[1], together with medical expenses, attorney’s fees and penalties, for total and permanent disability caused by a reactivation of regional enteritis or ileitis ultimately resulting from an accident[2] which occurred on October 6, 1959, when he fell in the establishment of his employer.
The defendant answered and admitted the occurrence of the accident but denied that plaintiff incurred a reactivation of regional enteritis or ileitis as a result thereof; that the disability resulting from the accident, if any, ended after eleven weeks during which time compensation and medical expenses [3] had been paid.
*694 From a judgment dismissing plaintiff’s suit, he has prosecuted this appeal.
The trial judge made a thorough analysis of this case in his written reasons for judgment, which in our opinion fully encompasses the subject posed for our consideration and the result which we have agreed should be reached.
“This is a suit for total permanent disability under the Workmen’s Compensation Act (R.S. 23:1021 et seq.). The plaintiff, Delmone Humphrey was injured on October 6, 1959, while in the employ of Falstaff Brewing Company. He brings this suit against Hartford Accident and Indemnity Company, its insurance carrier.
“The plaintiff alleges that for several weeks prior to October 6, 1959, he was employed as a janitor by the said company. On that date, while in the performance of his duties, he slipped and fell on a wet tile floor. As a result of this fall, he claims injuries to his back, neck and head, and in addition reactivation of a severe intestinal disease known as ileitis or regional enteritis. He contends that he is totally and permanently disabled from performing work of any nature whatsoever.
“The defendant, in answer, avers that it paid plaintiff compensation for a period of eleven (11) weeks at the rate of $35.00 per week, or a total of $385.00 from the date of the injury through December 22, and medical expenses incurred on his behalf in the amount of $244.18; that plaintiff has fully recovered from any injury he may have sustained by virtue of his said fall, and that the defendant is not responsible for further compensation payments to the plaintiff.
“The question at issue is whether or not the disease known as ileitis or regional enteritis was caused, aggravated or reactivated by the fall of plaintiff while in the course and scope of his employment. No serious contention is made that the plaintiff had not recovered from the injuries to his head, neck and back as of December 22, 1959, nor that he is not now incapacitated by ileitis or the effects thereof.
“The plaintiff contends that he was working on a split-level tiled floor; that it was wet and he slipped from the top level, striking the right side of his back on the middle step and his head on the top step. He was taken to the company doctor, Dr. Dabney M. Ewin, complaining of severe pains in the neck, occiput and right side of the head. The diagnosis was contusion of occiput, myofascial strain of the neck. X-rays were negative. The patient was not hospitalized. Treatment was bed rest, heat at home, daily hot packs and massage to neck.
“On October 13, 1959, the patient complained of pain just below the right ribs. On October 26, he complained of severe abdominal pains. A diagnosis of adhesions, not connected with the fall, was made and the plaintiff was sent by Dr. Ewin to Charity Hospital. On October 27, he was operated upon and found to be suffering from terminal regional enteritis or ileitis. Forty-five cms or eighteen inches of small and large bowel were removed. He was discharged from the hospital on November 17, 1959, as an out-patient, and at the present time, he is receiving treatment as such.
“The petition alleges a reactivation of this disease as a result of the accident, averring that prior to the accident plaintiff had last suffered from ileitis in 1952, when a successful operation had been performed and that he had thereafter suffered no symptoms of the disease until one week after the accident.
“Upon the trial, it was revealed that plaintiff had given previous medical histories of an appendectomy in 1939, a resection of an undetermined portion of the small and large bowel due to ileitis in 1944, repair of a ventral hernia in 1946, removal of anal fistulae in 1952, and a visit to Charity Hospital for dizziness in 1955. He nevertheless contends on trial that he had been symptom-free of ileitis since 1944-, and *695 accordingly the immediate and direct cause of its present reactivation was the injury suffered on October 6th.
“In this contention, he finds support in the testimony of Dr. Sydney Jacobs, an expert in the field of internal medicine to whom plaintiff was referred by his attorney. This doctor testified that ileitis is an affliction generally of the small bowel, chronic in its nature, arising from reasons not ascertained, leading to a thickening of the bowel and often accompanied by fistulae between the bowel and its outside wall and by general malnutrition. He was of the opinion that it could be caused by trauma and that an individual like plaintiff who had previously had an undetermined amount of bowel removed would be especially susceptible in a sudden, twisting of the body. Since plaintiff had been without symptoms for some thirteen years, an acute recurrence was of particular importance and suggests that this trauma caused reactivation of chronic progressive intestinal wall destruction.
“The defendant called and qualified as an expert in the field of internal medicine, Dr. Samuel B. Nadler. This doctor testified that ileitis is a relatively rare disease. Charity Hospital reports only fifty-four cases in twenty years. It is a disease of unknown etiology, similar to granulous tuberculosis. It is a chronic disease inflammatory in its nature, usually of young persons. It affects the terminal portion of the small intestine at the iliosacral valve. Rarely is it an acute disease, changes taking months and years to produce. Following surgery, the incidence of recurrence is about seventy per cent. An acute onset following trauma is contrary to clinical observation. However, if the direct application of force could cause acute ileitis, the symptoms would manifest themselves immediately and would not develop a week or more after the application of force.
“It will be noted that Dr. Jacobs reasons that since plaintiff had been without symptoms of ileitis for some thirteen years, an acute recurrence following the fall suggests this trauma caused reactivation of the disease. That plaintiff had been without symptoms for that period of time was a fact obtained by the doctor from the plaintiff himself. As a basis for his opinion it was properly considered by the doctor; however, considered as an evidentiary fact, it is a self-serving declaration insufficient of itself to support acceptance of the doctor’s opinion of a causal connection between the injury and the present disability.
“Plaintiff attempts to support this necessary and vital fact by showing his work record preceding his injury. Instead of substantiating his good health, we believe that it shows the contrary. His pay voucher stubs show that he worked during thirty-four weeks of 1959 for seven different employers. During these periods, his record shows only fifteen full weeks of forty hours. Besides the transcript is replete with conflicting statements and histories given at unsuspicious times which cast serious doubt on his good health for fifteen years prior to the injury. On page 8[4] of the Charity Hospital Report, the patient stated that he was perfectly well except that his stools are consistently soft and that he suffered no abdominal trauma in the fall. We have hereinabove described his past operative history which conflicts with the history given Dr. Jacobs and the allegations of his petition. In applying for his last position, he deliberately misstated his age and his previous medical record. If there existed a causal connection between the injury and the disability, such deliberate falsehoods might not be of importance. However, they tend to discredit the history given Dr. Jacobs and upon which this doctor, in good faith, relied for his diagnosis.”
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.

. Subject to a credit of $385, compensation paid for eleven weeks, or from October 6 through December 22, 1959.

. As an immediate result thereof, he incurred head, neck and back injuries which plaintiff concedes are not an issue herein and he has been fully compensated therefor.

.Medical expenses in the amount of $244.-18 had also been paid.

. In reviewing the Charity Hospital report we noted that the correct page number is eleven, not counting the transmittal memorandum.