YARRUT, Judge.
Plaintiff appeals from a judgment of the district court denying him workmen’s compensation, statutory penalties and attorney’s fees under the State Compensation Act, LSA-R.S. 23:1 et seq.
Defendants are the employer and its insurer. Reference herein to “Defendant” will be to the employer, T. L. James and Company, Inc.
There is no dispute that Plaintiff was employed in a hazardous capacity (raking hot asphalt heated to 275 to 375 degrees), and if entitled to compensation, would be entitled to the maximum of $35 per week.
The issues are twofold: (1) Whether Plaintiff’s claim is perempt or prescribed by two years intervening from the date of the alleged injury and the filing of suit; and (2) whether Plaintiff’s present disability resulted from an injury sustained in the course of his employment.
The question of prescription and peremption may be promptly disposed of since it is not challenged, but admitted, that Plaintiff was paid compensation until September 15, 1960, and this suit was filed on December 7, 1960, well within the year from the last payment of compensation. Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218; Wallace v. Remington Rand, 229 La. 651, 86 So.2d 522; Johnson v. Cabot Carbon Company, 227 La. 941, 81 So.2d 2; Stiles v. International Paper Co., La.App., 39 So.2d 635.
The pleas of prescription and peremption are, therefore, overruled.
On the question of injury and causation, Plaintiff charges that while at his work a dump truck, unloading the molten asphalt, splattered some on his face, arms and right foot, causing severe burns, and disfiguration of the skin in the burned areas.
Following the above incident Defendant’s foreman applied first aid treatment and continued Plaintiff at his usual occupation until Plaintiff was ordered by the Defendant’s doctor not to engage in work near hot asphalt. Plaintiff was then put to work laying shells on roads (an inferior job with less pay). He continued at this job for several months until he complained that exposure to the sun worsened his condition. A medical report signed by Defendant’s office manager so records.
Plaintiff was paid compensation until September 15, 1960, following which on December 7, 1960, this suit was filed for permanent total disability, plus medical expenses, 12% damages, and reasonable attorney’s fees.
The decisive issue here is the question of causation. To this extent we must depend upon the medical testimony, bearing in mind that Plaintiff, notwithstanding the paternalistic application of the workmen’s compensation law, must nevertheless prove his case by a preponderance of evidence. Mitchell v. Brogdon, La.App., 106 So.2d 531; Humphrey v. Hartford Accident & Indemnity Company, La.App., 128 So.2d 693.
Plaintiff offered only the testimony of Dr. Salatich, a general practitioner, who *477 examined Plaintiff on two occasions, namely, September 9, 1960 and June 6, 1961, but did not treat him. His diagnosis that the depigmented areas were caused by second or third degree burns was, apparently, predicated on his acceptance of Plaintiff’s statement to that effect. However, the conflict between Plaintiff’s testimony, concerning the alleged accident and the date of occurrence, with the recorded statements made by him to Dr. Sanders, Charity Hospital, Dr. Perret and Dr. Salatich, appears clearly to discredit the history given by him to Dr. Salatich upon which this doctor, in good faith, relied for his diagnosis. Humphrey v. Hartford Accident & Indemnity Company, La.App., 128 So.2d 693.
Dr. Salatich indicated that the depig-mented areas could be attributable to causes other than burns, such as, vitiligo or discoid L.E. (lupus erythematosus), which are developmental conditions, not related to trauma, the cause of which is unknown. He conceded that he made no differential diagnosis to rule out the other diseases that could have caused the depigmented areas; and that a doctor who had followed such a procedure, with the aid of biopsy, would be in a better position to give a more accurate diagnosis.
Extensive treatment for the depigmented areas was received by Plaintiff in the Dermatology Department at Charity Hospital. The records of that Plospital disclose:
August 12, 1959 “Pt. seen (with) Dr. Mundt — he feels that clinically this is discoid L.E.”
September 28, 1960 “Has a new erythematous plaque-like lesion about rt. lip which clinically is suggestive of discoid L.E.— will biopsy this lesion.”
October 19, 1960 “Biopsy from lip reported as highly suggestive of L.E. This lesion has involuted since pt. started Aralen. Cont. Aralen 250 mgm. b.i.d.”
January 11, 1961 “Lesions of Discoid L.E. continue inactive.”
The Charity Hospital records further indicate discoid L.E. On August 12, 1959, leukaderma; on September 3, 1959, chronic dermatitis; on July 6, 1960, as chronic nonspecific dermatitis; on July 27, 1960, it was diagnosed as dermatitis; and on September 7, 1960, as asphalt sensitivity.
Dr. Sanders, for Defendants, suggested that Plaintiff had asphalt dermatitis.
The diagnosis by the doctors at Charity Hospital that the depigmented areas were caused by discoid L.E., as opposed to burns, is fortified by the fact that a new lesion appeared between Plaintiff’s visits to the Hospital on September 7 and September 28, 1960, long after he had left the employ of Defendant on June 29, 1960; and, also, by the fact that “Aralen,” a drug used in the treatment of discoid L.E. was effectively administered for the relief of Plaintiff’s acute symptoms.
Both Dr. Salatich and Dr. Perret, testified that if the depigmented areas were caused by burns, they would not expect such a new lesion to develop.
Dr. Perret, a dermatologist, did not make a biopsy and did not definitely determine whether the depigmented areas were attributable to burns, vitiligo or discoid L.E., each of which could have been the cause thereof. However, in any event, he believed Plaintiff was not disabled from performing laborious work, and that he could do such work in sun light, provided he avoided contact of the direct rays of the sun with the depigmented areas by wearing long pants, a shirt with long sleeves and a *478 broad brimmed hat, and by putting a cream on his lips.
The opinion of Dr. Perret, concerning Plaintiff’s ability to work is supported by the Charity Hospital record, wherein it is shown that from Plaintiff’s visit on November 30, 1960 through his last visit on May 3, 1961, the lesions, represented by the depigmented areas, continued “inactive.”
In view of the conflicting medical testimony concerning whether or not Plaintiff’s condition and disability stems from the asphalt burns or some other pre-exist-ing condition, and that the dispute relates solely to the medical etiology of the disease in question, we are forced to the conclusion that Plaintiff has not borne the burden of proof required even of a workmen’s compensation claimant.
For the reasons assigned, the judgment of the district court is affirmed; costs in both courts to be paid by Plaintiff.
Affirmed.