LANDRY, Judge.
Plaintiff herein, Royal Glover, alleging total and permanent disability resulting from rheumatoid arthritis in his right knee purportedly precipitated by a nail puncture of his right foot, instituted this action against his employer, Acme Brick Company, praying for judgment for maximum workmen’s compensation benefits for the period of disability, not to exceed 400 weeks. Trial in the court below resulted in judgment in favor of defendant employer rejecting and dismissing plaintiff’s demands. From the aforesaid adverse judgment, plaintiff has appealed.
It is conceded plaintiff sustained ail accident during the course and within the scope of his employment by defendant. The sole issue before the court is the causal connection, if any, between the accident and the' aforesaid disabling condition which developed several months thereafter.
The parties are in agreement that on May 31, 1960, while acting within the scope and during the course of his employment by defendant, plaintiff-appellant stepped on a nail injuring his foot. There is disagreement, however, as to whether plaintiff’s left or right foot was involved in the accident. Plaintiff maintains his right foot was thus injured while appellee contends the injury occurred to appellant’s left foot.
On the day of the accident, plaintiff, a common laborer 42 years of age, was engaged in helping one Merlin Nevels rebuild kiln cars (a contrivance on which bricks are stacked). The cars in question were being provided with new metal tops which were installed by burning the old tops off with a torch and welding new metal tops thereto. In the course of such work, plaintiff stepped on a large nail which penetrated his shoe and inflicted rather serious injury to his foot. Plaintiff immediately reported the accident to Nevels who upon examining the wound, (after requiring plaintiff to remove his shoe), directed plaintiff to report, to the company office for treatment. Plaintiff immediately proceeded to the office, disclosed his injury to William G. Malone, Plant Superintendent, and was sent to .the office of Dr. Robert Matthews where plaintiff received an anti-tetanus “shot”. Plaintiff was then returned to defendant’s plant where he remained until the end of the work day at which time he left for his home. May 31, 1960 was a Tuesday. Plaintiff returned to work the following Monday, June 6, 1960, on which day he was allowed to perform light work only. Thereafter, plaintiff continued in defendant’s regular employ, doing the same work in which he was engaged prior to his injury, until' November, 1960. It is conceded that from *104 the date of his injury until November, 1960, plaintiff sought no further medical aid but treated the injured member at home by daily soaking the wound in a saline solution and applying iodine thereto. In or about early November, 1960 (the record does not indicate with certainty) plaintiff’s right knee commenced to trouble him and for relief therefrom plaintiff consulted a Dr. Smith whom plaintiff visited on several occasions. It appears Dr. Smith was unavailable to testify upon the trial of this matter considering he was no longer a resident of this state. The treatment prescribed by Dr. Smith did not alleviate plaintiff’s condition which worsened to such extent plaintiff ultimately became unable to walk. On November 19, 1960, plaintiff, in a wheel chair, consulted Dr. R. E. Dupre, Physician and Surgeon, who, upon examination, found plaintiff to be suffering from a badly infected and inflamed right knee. Dr. Dupre tentatively diagnosed plaintiff’s condition as rheumatoid arthritis and immediately confined plaintiff to a hospital. Plaintiff remained hospitalized under Dr. Dupre’s care until December 3, 1960, on which date he was discharged as improved inasmuch as he was then ambulatory.
Although plaintiff maintains the injury was to his right foot, the evidence clearly preponderates in favor of defendant’s contention the wound occurred on appellant’s left foot. As previously stated, plaintiff’s immediate superior, Nevels, testified he was present when the accident occurred. He required plaintiff to remove his shoe and noted the wound was to plaintiff’s left foot. Defendant’s plant manager, William G. Malone, stated he interviewed plaintiff following the accident, made out the report on plaintiff’s injury and recalled the injury was to appellant’s left foot. Ralph Bene-field, an assistant foreman at defendant’s plant, testified he met plaintiff in the plant on the day of the accident following plaintiff’s return from Dr. Matthews’ office and plaintiff showed him the hole in plaintiff’s left shoe through which the nail entered plaintiff’s foot. In addition, the statement of Dr. Matthews appearing of record indicates that, predicated upon the records of his office, the injury in question was to plaintiff’s left foot.
Defendant’s position, succinctly stated, is simply that plaintiff has failed to discharge the burden incumbent upon him of establishing by a fair preponderance of evidence that the injury to appellant’s foot caused, activated or “triggered” the rheumatoid arthritic condition of appellant’s right knee which developed approximately six months following plaintiff’s injury. On the contrary, learned counsel for appellant maintains the medical testimony adduced herein establishes with reasonable certainty, that the arthritic condition of plaintiff’s right knee was “triggered” by the accident of May 31, 1960, and the aforesaid injury is, therefore, compensable.
The testimony of Dr. Robert Matthews (taken in response to interrogatories propounded in lieu of his personal appearance) indicated plaintiff was seen by the witness on May 31, 1960, at which time plaintiff was suffering from a puncture wound of the left foot due to appellant having stepped on a nail. Dr. Matthews administered tetanus antitoxin, prescribed a drug known as Madribon (to combat infection) and suggested daily soaks to keep the wound open in order to permit drainage of any foreign material which may have lodged therein. Plaintiff was seen by Dr. Matthews only on this one occasion.
Dr. R. E. Dupre, called on behalf of appellant, stated he first saw plaintiff November 19, 1960, on which date plaintiff’s condition was such that plaintiff was unable to walk. Plaintiff was brought to his office in a wheel chair and after examining plaintiff, he immediately confined plaintiff to a hospital. Dr. Dupre found plaintiff to be suffering from a badly infected right knee which, in addition to being greatly inflamed and swollen, was painfully sore and sensitive even to touch. Plaintiff’s condition was tentatively diagnosed as rheumatoid arthritis. During plaintiff’s hospitalization, Dr. *105 Dupre prescribed antibiotics, rest and application of heat to the affected knee. After having treated plaintiff for several days, Dr. Dupre concluded plaintiff’s trouble was definitely due to rheumatoid arthritis which is a cartilage disease. According to Dr. Dupre, the etiology or cause of rheumatoid arthritis has never been determined and is, therefore, unknown to medical science. It is, however, a disease believed to be primarily caused by infection, either local or general, although it is also the consensus of medical opinion that it may also be caused by trauma. If activated or triggered by trauma, it generally makes its first appearance at the seat of the trauma, whereas, if occasioned by infection, the rheumatic condition may erupt in any bodily joint irrespective of whether the causitive infection is general or local. In essence, Dr. Dupre was of the opinion plaintiff’s condition was due to infection. He doubted, however, the condition of plaintiff’s right knee was due to infection precipitated by the nail wound because rheumatoid arthritis resulting from infection usually appears shortly after the infection occurs and in plaintiff’s case the condition did not develop until several months following injury. Predicated upon plaintiff’s medical history, he was unable to state the precise cause of plaintiff’s condition although he considered the puncture wound a rather remote possibility conceding the injury occurred to plaintiff’s right foot as contended by plaintiff. In the event the injury were in fact to plaintiff’s left foot, he considered the causal connection between the injury and plaintiff’s arthritis even more remote. He did not, however, completely rule out the possibility that injury to plaintiff’s left foot may have in fact caused plaintiff’s condition.
Dr. Douglas L. Gordon, Physician, called on behalf of defendant, testified he examined plaintiff April 12, 1962 (the day preceding trial), for purposes of medical evaluation only. At the time of his examination (which consisted of physical examination only), Dr. Gordon found plaintiff’s condition in comnlete remission. His examination disclosed no swelling or thickening of the right knee and no evidence of organic disease or involvement. Dr. Gordon confirmed the testimony of Dr. Dupre to the effect the cause of rheumatoid arthritis is unknown to the medical profession. Like Dr. Dupre, however, he believed such malady could result from either trauma or infection. In the opinion and experience of Dr. Gordon rheumatoid arthritis is seldom confined to a single joint. He was of the further opinion rheumatoid arthritis resulting from trauma should appear within a short time of injury, in a matter of several days or two or three weeks. While he considered it within the realm of possibility that trauma could result in the appearance of rheumatoid arthritis some two or three months subsequently, in his opinion, the condition, if produced by trauma, should result in a much shorter period. According to Dr. Gordon, on the date of his examination he found absolutely nothing wrong with plaintiff’s right knee and could not state whether plaintiff was in fact suffering from rheumatoid arthritis at that time. In his opinion only X-ray and laboratory examination could reveal with certainty whether plaintiff in fact had any trouble with his right knee. Dr. Gordon conceded he conducted a purely physical examination of plaintiff’s knee and made no X-rays or laboratory tests. He was of the opinion that if the puncture wound occurred to plaintiff’s left foot, it was very unlikely plaintiff’s right knee would thereafter be affected by rheumatoid arthritis as a result thereof. Dr. Gordon acknowledged, however, the possibility of causal connection between the trauma and rheumatoid arthritis in plaintiff’s right knee would be greater if the injury were to plaintiff’s right foot instead of the left. Granting the injury occurred to plaintiff’s right foot, he could not state with any degree of certainty that a causal connection existed even though he readily admitted the possibility of such relationship,
There appears in evidence hospital records of the Charity Hospital in New Or *106 leans indicating plaintiff received treatment at that institution as an out patient from March 16, 1961 to November 13, 1961. The ■reports indicate plaintiff was suffering from a cartilage disease known as chon-•dromalacia which was “non-traumatic” in Origin. .
The record as a whole convinces us plaintiff is, in fact, suffering from a cartilage disease in his right knee which condition, in all probability, antedated the date of the accident. In this regard we note the testimony of plaintiff’s immediate superior, Merlin Nevels to the effect plaintiff was assigned his helper approximately three weeks previous to plaintiff’s injury. Nevels observed from the beginning that plaintiff walked' with a limp. He"'further stated the nattíre of plaintiff’s work involved considerable “squatting” but plaintiff would kneel-instead of “squat”. Nevels repeatedly asked plaintiff why he could not “squat” but always knelt instead and plaintiff replied his right knee gave him trouble once in a while. According to Nevels, on several occasions prior to the accident, plaintiff not only complained of his right knee but reported to work with his knee “swelled up pretty big”. Subsequent to the accident plaintiff returned to work within four or five days and continued to complain of his knee but made no complaint regarding his foot.
Irving Ardoin, an employee of defendant, corroborated Nevels’ testimony regarding plaintiff’s complaints concerning plaintiff’s right knee prior to the accident.
It is the settled law of this state that a plaintiff in a suit seeking workmen’s compensation benefits carries the burden of proof as in other civil matters and is required to establish his claim to a legal certainty by a reasonable preponderance of evidence. Furthermore, establishment of such claims only to the extent of possibility or even probability is insufficient, and speculation, conjecture, mere possibility and even unsupported probability- are not sufficient to support a judgment.for workmen s compensation benefits. Mitchell v. Brogdon, La.App., 106 So.2d 531; Driggers v. Coal Operators Casualty Co., La.App., 73 So.2d 602.
Our learned brother below correctly concluded plaintiff herein failed to carry the burden of proof incumbent upon him and properly dismissed plaintiff’s suit.
Judgment affirmed.