ELLIS, Judge.
The plaintiff, Willie Norman Owens, Jr., was employed as a rough carpenter by F. H. McGraw and Company, made defendant herein together with its workmen’s compensation insurer, Aetna Casualty and Surety Company. The accident and resulting injury, which was within the scope of employment, occurred on March 14, 1958. After the first week, compensation was paid for seven weeks at the maximum rate.
Plaintiff alleges that he and Tommy Muscarello, a co-employee, were engaged in lifting a large timber six by eighteen (6 x 18) inches around by eighteen (18) feet in length preparatory to cutting it into shorter lengths. During the operation Muscarello slipped and dropped his end. Owens held onto the other end and, in so doing, sus *162 tained a back injury. Plaintiff complained of the injury at the time but continued working until the end of the day (Friday). The next working day, Monday, plaintiff was placed on light duty by the company first-aid authority. He worked for two weeks on light duty, commuting 120 miles per day round trip. After this period Owens was one of several who lost their jobs in a general layoff.
The trial judge heard the case on the merits on May 14, 1959. No brief was filed by plaintiff until July 22, 1963. Written reasons for judgment were given on April 24, 1964, dismissing plaintiff’s suit at his cost. This appeal followed.
The defendants have taken the position that plaintiff failed to prove the occurrence of the accident. In the alternative, defendants contend that plaintiff failed to prove any disability beyond the eighth week following the accident.
We are of the opinion that the accident did in fact occur on March 14, 1958. Both plaintiff and Tommy Muscarello testified to the circumstances and there is no evidence to the contrary.
Defendants have pointed out inconsistencies between the plaintiff’s testimony on the trial of the case, his discovery deposition, and written statement given to an investigator. These inconsistencies concern the size of the timber being lifted and the time of day that the accident occurred. We consider these as trivial and unimportant details not likely to be impressed on the mind of plaintiff at the time of the accident and less likely to be remembered fourteen months later during the trial.
There is, however, sufficient merit in defendants’ alternative contention to require a dismissal of the action. We are in accord with tire trial judge and hold the considered opinion that plaintiff has failed to establish his disability by a preponderance of the evidence. Rather, the evidence demonstrates that Owens was not permanently disabled and that the injury he did sustain was minor and of brief duration.
The trial judge has favored us with written reasons for judgment containing a detailed summary of the medical evidence in this case. The medical evidence consists of various written reports from the two general practitioners and three specialists who examined or treated Owens. We adopt the opinion of the lower court on this point as follows:
“According to the medical reports filed in the record, Mr. Owens was first seen by Dr. Carlos D. Alessi of Hammond, Louisiana. Owens related a history of pain of the back which had gradually become worse. According to this Doctor’s report, dated October 6, 1958, examination did not reveal anything of importance except for pain upon hyperextension of left leg.
“He was given microtherm, ultrasonic radiation treatment to the leg. After he received the total of 63 office treatments, Dr. Alessi’s conclusion was that Mr. Owens had definitely a ruptured disc. In his opinion, he would be subject to periodic attacks in which he would be symtomless and any exertion might bring on an acute exacerbation of his pain.
“The plaintiff was examined by Dr. G. C. Battalora, an orthopedic specialist, on May 9, 1958, an x-ray examination was made of the lumbosacral spine. There was noted a left lumbar scoliosis (curvature of spine) which began at the 4th lumbar and ran up into the dorsal region. A suggestion of a lamina defect of the 5th lumbar on the right side was noted. No evidence of any bony injury to the lumbo-sacral spine was noted. It was this doctor’s conclusion, that this man was exaggerating his complaints. Upon examination this doctor observed that he limits some *163 motion of his back and complained of pain and yet in a very strained position he has no pain in his back and can perform a difficult maneuver without any discomfort. Dr. Battalora consulted with his physician in Hammond and suggested the use of exercises for two weeks then discharge.
“Willie Owens was again seen by Dr. Battalora on June 9, 1958. After performing various tests, the Doctor reached the conclusion that he was unable to find any condition in this man’s complaint which would cause disability. He states that he considered the possibility of a disc herniation but could find no evidence of it. It was his conclusion that this man should be able to resume his previous occupation as a carpenter.
“On June 26, 1958, the plaintiff was examined by Dr. Duane Forman, a neurological surgeon of Baton Rouge. Dr. Forman reported to Dr. Alessi that Owens presented no objectively abnormal physical findings, his symtoms and subjectively abnormal findings were suggestive of a diagnosis of the nerve root compression on the left side in the lower lumbar area, probably from ruptured intervertebral disc at the L-4 or L-5 interspace. Dr. Forman advised myelography to clarify the diagnosis but the plaintiff was definitely against submitting to this procedure.
“On September 9, 1958, the plaintiff was examined by Dr. Dean H. Echols of Ochsner Clinic. After examination and the giving of various tests Dr. Echols concluded that this man’s story is suggestive of rupture of one of the lower lumbar intervertebral discs, with intermittent low back pain and left sided sciatica. However, the Doctor concluded there were no truly objective findings and he was not sure that he did have a ruptured disc.
“On September 24, 1958, Willie Owens consulted Dr. Alexander J. Feder of Hammond, Louisiana. On October 14, 1958, this Doctor reported that he had seen the plaintiff 11 times since September 24, 1958, for treatment and for the purpose of evaluation. It was his opinion that the man presented a typical classbook picture of a herniated L-4 or L-5 intervertebral herniated disc. He expressed the belief that he was not simulating and that he was sincere in his complaints because he could not simulate muscular spasms and failure to reverse his lordotic curve. It was his opinion that the plaintiff would continue to have recurrence for a long time to come. Dr. Feder commented that Dr. Echols must have examined the patient during a period of remission and suggested a re-examination.
“On March 13, 1959, Dr. Feder again reported that he had seen the plaintiff some 60 times since his report on October 21, 1958, and that while Owens had shown some improvement he was not well and that he still felt that this man had a herniated disc. He still had limitation of motion and he had seen him when he had quite a bit of lumbo-sacral muscular paravertebral spasms in the area. He suggested that he’d like him to return for a check up by Dr. Echols.
“On March 24, 1959, the petitioner was again examined by Dr. Dean H. Echols of Ochsner Clinic. His conclusion at this time was that as stated in his original report, this man’s story was suggestive of rupture of one of the lower lumbar intervertebral discs, particularly the fourth lumbar disc, but there were no physical findings to back up his claim of pain and disability. The Doctor stated that he felt even more strongly than he did in September, 1958, that this man had recovered from the *164 alleged lifting injury sustained on March 14, 1958.
“On March 24, 1959, Willie Owens was again examined by Dr. G. C. Bat-talora. Dr. Battalora’s conclusion on this occasion was that he was unable to find any disabling condition in this man’s back. He stated that Owens complains of pain in the back of his left thigh and leg and yet his straight leg raising is equal on both sides and can be perfonned to a normal extent. He makes no complaint of pain in his legs on straight leg raising. To the Doctor’s mind this indicated he had no disc herniation. He could sit normally on the table in a strained position and this would negate the finding that he limits spine motion in the erect position. He concluded that he felt that this patient could resume his previous type occupation.
“On April 6, 1959, Dr. A. J. Feder of Hammond again reported that he had seen the patient four additional times since March 13, 1959. He concluded that while the patient has shown improvement he is not well and will be unable to do hard, arduous labor for a long time to come. He states in his report that he has given the patient 68 short wave physiotherapy treatments, examinations and consultations. He further recommended that the patient be returned to Dr. Dean H. Echols for determination as to whether surgery should be intervened.
“We have considered the record in this case, including the medical reports, very carefully because it seems inconceivable that a person would receive some 134 medical treatments to his back without a pathological condition. However, it will be noted that these treatments were given to Willie Owens by his two treating physicians based principally upon symptoms which were related or told by the patient to these Doctors rather than upon subjective (sic) (objective) findings. The narration of complaints to the Doctors served as the basis of their diagnoses and subsequent treatment. As a basis for the diagnoses, we are of the opinion that the narration of symptoms and complaints was properly considered by the Doctors. However, considered as evidentiary facts, they were actually self serving declarations insufficient of themselves to support acceptance of these opinions of a causal connection between the injury and the present disability. Humphrey v. Hartford Accident & Indemnity Co. [La.App.] 128 So.2d 693.
“Again, we have the opinions of the three specialists that they could find no subjective (sic) (objective) evidence of an injury to this man’s lower back. Injuries to the lower back fall within the particular field of the neurological surgeon and the orthopedist. We are of the belief that their opinions should be given greater weight than those of the general practitioners. Anderson v. Peek [La.App.] 102 So.2d 776.
“The Court observed the plaintiff very carefully during the trial of the case. While the plaintiff stated that he was wearing a corset, he was asked to demonstrate the movements of his back. The Court could not detect any limitation in his motions nor did he present any physical outward appearance of being disabled.”
The decision of the lower court dismissing plaintiff’s suit at his cost is
Affirmed.